UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Russell and Senior Judge Frank

BRIAN LOWERY

v.      Record No. 1540-17-2

HALIFAX COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 18, 2018

FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Kimberley S. White, Judge

(R. Colby Warren; Haymore & Holland, P.C., on brief), for
appellant.

(Matthew W. Evans; Melissa E. Fraser, Guardian *ad litem* for the
minor child; Gravitt Law Group, P.L.C., on brief), for appellee.

Brian Lowery (father) appeals an order terminating his parental rights to his child, R.L.

Father argues that the circuit court erred in "holding that sufficient clear and convincing evidence

was presented to find that it was in the child's best interest to terminate [father's] parental rights."

Upon reviewing the record and briefs of the parties, we conclude that this appeal is without

merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most

favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty.

Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v.

Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In August 2015, Valerie Michelle Green (mother) gave birth to R.L., the child who is the subject of this appeal. R.L. was born substance-exposed, as mother was addicted to opiates. Mother admitted that, during her pregnancy with R.L., she used heroin, and shortly before R.L.'s birth, she used fentanyl, which she bought off the street. After being released from the hospital, R.L. was placed in a foster care home, and the Person County Department of Social Services, in North Carolina, was awarded temporary custody of R.L.[1]

In January 2016, the case was transferred to Halifax County, Virginia and the Halifax County Department of Social Services (the Department) was granted custody of R.L. The Department was concerned about mother's substance abuse, lack of appropriate housing, and "a lot of instability."

Upon receiving the case, the Department could not locate father. In August 2016, mother gave birth to another child, but father is not the biological father to this child.[2] At the same time, mother and father resumed their relationship and started living together. Although mother and father were living in "an appropriate home," the Department remained concerned about the parents' stability.

The Department offered supervised visitation every other week with R.L., who had been placed with a foster family. Because the Department initially could not locate father, his first visit with R.L. was on March 22, 2016, and his next visit occurred on April 8, 2016. Thereafter, he did not visit with R.L. again until November 14, 2016. Father told the social worker that he had been working and could not visit with R.L. In November 2016, the Department arranged for two home visits, which mother and father attended. On December 19, 2016, the foster parents supervised a visit at the parents' home. The foster mother testified that father was late arriving

---

[1] R.L. was born in North Carolina.

[2] This child is no longer in mother's care; the biological father has custody of that child.

home from work, took a shower, and then, picked up mother's youngest child and hardly acknowledged R.L. The foster mother said that father "kept disappearing . . . saying he had to do this and grab that." Thereafter, the Department's records reflected that father visited with R.L. on February 10, 2017 and May 2, 2017.

The Department required father to participate in substance abuse counseling and to be screened for drugs quarterly. Father's screens were negative for drugs.

The Department also informed father that he needed to participate in a psychological evaluation and individual counseling. Father completed the psychological evaluation with Dr. Michele K. Nelson in October 2016. Dr. Nelson diagnosed father with posttraumatic stress disorder (PTSD), adjustment disorder with mixed anxiety and depressed mood, and opiate use disorder, in remission. Dr. Nelson explained that father was not seeking mental health treatment for his PTSD, and "[i]n an ideal world, [he] would go to the VA Hospital and get intensive treatment for his PTSD and substance abuse issues." However, she recognized that father worked and that "he hope[d] that once [R.L.] is returned to his custody and he has many fewer court-related appointments, he will be able to get PTSD treatment from a less appointment intensive program than the VA Hospital." Dr. Nelson opined that although father had "issues," there was no "reason from a psychological perspective why he is unable to parent [R.L.]." At the time of the circuit court hearing, the Department was unable to determine whether father had received any individual counseling, but father admitted that he did not participate in individual counseling for PTSD at the VA Hospital.

In January 2017, the Department filed a petition to terminate father's parental rights to R.L. On May 5, 2017, the Halifax County Juvenile and Domestic Relations District Court (the

Halifax JDR court) terminated father's parental rights to R.L., and he appealed to the circuit court.[3]

On July 31, 2017, the parties appeared before the circuit court. The Department presented evidence that R.L. was healthy and doing well in foster care, where he has lived with the same foster parents since he was four months old. The foster mother testified that she and her husband would be interested in adopting R.L. At the conclusion of the Department's evidence, father made a motion to strike, which the circuit court denied.

Father testified that he was employed as an "industrial electrician, welder, [and] fabricator." From February 2 through April 14, 2017, father was out of work because of medical issues with his right wrist. As a result of his medical issues, he said that the Department did not want him to visit R.L. Father admitted to a previous addiction to opiates, dating back to 2008; however, he testified that he had not used any opiates since August 2, 2015. He admitted to using cocaine with mother on Thanksgiving Day in 2015. Father explained that since April 2016, he had been going to New Hope Urgent Care in Durham, North Carolina, for substance abuse counseling and medication. Father acknowledged that he had been convicted of several felonies and misdemeanors and was on supervised probation at the time of the circuit court hearing.

On cross-examination, father admitted that he did not attend the first two hearings regarding R.L. He explained that he had outstanding arrest warrants against him and did not want to get arrested until he earned enough money for bond. He also admitted to not attending all visitations with R.L., but said that he "did the best [he] could do." Also, when R.L. first entered foster care, father lived at several different addresses before he and mother moved to

---

[3] On May 5, 2017, the Halifax JDR court also terminated mother's parental rights to R.L., and she appealed to the circuit court.

their current residence. However, he emphasized that he now was employed full-time and that he wanted R.L. returned to him and mother.

At the conclusion of all of the evidence, father renewed his motion to strike, which the circuit court denied. After hearing the parties' arguments, the circuit court terminated father's parental rights pursuant to Code § 16.1-283(C)(1).[4] On September 7, 2017, the circuit court entered an order reflecting its rulings. This appeal followed.

ANALYSIS

In our review of a trial court's termination of parental rights, the "trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558, 811 S.E.2d 835, 840-41 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).

Father argues that the circuit court erred in finding that the Department proved by clear and convincing evidence that termination of his parental rights was in R.L.'s best interests. "'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48, 764 S.E.2d 284, 291 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Id. (quoting Toombs v.

_____

[4] The circuit court also terminated mother's parental rights to R.L. She timely noted an appeal to this Court. See Green v. Halifax Cty. Dep't of Soc. Servs., Record No. 1525-17-2.

Lynchburg Div. of Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407 (1982)). "In its capacity as factfinder, therefore, the circuit court retains broad discretion in making the decisions necessary to guard and to foster a child's best interests." Castillo, 68 Va. App. at 558, 811 S.E.2d at 841 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 266, 616 S.E.2d 765, 769 (2005)).

The circuit court terminated father's parental rights pursuant to Code § 16.1-283(C)(1), which provides that parental rights may be terminated if the trial court finds that termination is in the best interests of the child and that:

> [t]he parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

Father asserts that the circuit court focused on mother's deficiencies and that she was the reason that R.L. was placed in foster care. However, in issuing its ruling regarding father, the circuit court focused on father's inability to comply with the Department's requirements and his own deficiencies. The circuit court held that father did not have any contact with R.L. for six months, namely from April 8, 2016 through November 14, 2016. Father said that he was busy with work, yet as the circuit court found, father missed early visitations with R.L. when the case was still in North Carolina and father missed several hearings due to outstanding arrest warrants. The circuit court questioned father's ability to comply with probation and counseling, while being unable to comply with the Department's requirement that he maintain contact and visit with R.L. Furthermore, father failed to develop a plan for R.L.'s care until "just a few months ago." The circuit court expressed concern about father's criminal history, his failure to attend

the required individual counseling, his "numerous addresses" while R.L. was in foster care, and his unstable relationship with mother. The circuit court concluded that it was in R.L.'s best interests to have permanency and that father's parental rights should be terminated.

At the time of the circuit court hearing, R.L. had been in foster care for most of his life, and he had lived with the same foster family since he was four months old. Father had not complied with the Department's requirements, including visiting with R.L., and was not in a position to care for R.L. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322, 746 S.E.2d 509, 522 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)). Based on the totality of the record, the circuit court did not err in finding that it was in the child's best interests to terminate father's parental rights pursuant to Code § 16.1-283(C)(1).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.