COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Petty, Huff and Senior Judge Annunziata
Argued at Lexington, Virginia


BRISTOL DEPARTMENT OF SOCIAL SERVICES

v.      Record No. 0532-14-3

MAGGIE S. WELCH                                                OPINION BY
                                                     JUDGE WILLIAM G. PETTY
                                                         NOVEMBER 4, 2014
PATRICIA E. SMITH, GUARDIAN *AD LITEM*
  FOR MINOR CHILD

v.      Record No. 0558-14-3

MAGGIE S. WELCH


              FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
                     Isaac St. C. Freeman, Judge Designate

        Edward G. Stout (Curcio & Stout, on brief), for appellant Bristol
        Department of Social Services.

        Patricia E. Smith (Bradford & Smith, on brief), Guardian *ad litem* for
        the minor child.

        Michael A. Bishop (Michael A. Bishop, P.C., on briefs), for appellee.


        The Bristol Department of Social Services (DSS) and Patricia E. Smith, Guardian *ad litem*,

appellants, appeal from the circuit court's denial of the petition to terminate the parental rights of

Maggie S. Welch with respect to her minor child, C.W.[1]  The appellants argue that the circuit court

erred in:  (1) delaying its decision regarding the termination of Welch's parental rights, (2) ignoring

_____

        [1] For purposes of this opinion, the Court has consolidated the cases of the Bristol
Department of Social Services and Patricia E. Smith, Guardian *ad litem*.  The facts of both cases are
identical, the issues on appeal are the same, and the resolution of the cases is the same.

the statutory time frame in which the parent may remedy the conditions that led to foster care, and (3) failing to protect the best interests of the child. For the following reasons, we affirm in part and dismiss in part.

## I. Background

On appeal, we view the evidence "in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom." Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

On December 26, 2010, DSS removed two children from Welch's care because of their suspicious injuries. Welch's three biological children, B.N.G., B.S.G., and C.W., were also removed from her care on that day. At the time of removal, B.N.G. was seven years old, B.S.G. was two years old, and C.W. was five months old.

On February 16, 2011, DSS prepared an initial foster care plan with the goal of returning C.W. to his own home within a year. DSS expressed concerns about returning C.W. and the other children to Welch's care because of her history of domestic violence with her husband and because of the trauma that the children suffered from witnessing the abusive relationship. DSS referred Welch to various services, including parenting classes, individual counseling, anger management classes, job searches and programs, parenting and psychological assessments, and visitations as scheduled by DSS.

Welch was arrested on federal charges on June 7, 2011. Welch pled guilty to drug conspiracy charges and the knowing use and carrying of a firearm in furtherance of a drug trafficking crime.

DSS prepared a revised foster care plan with the goal of adoption. DSS stated in the plan that Welch had refused individual counseling and "continued her lifestyle of drugs, dealing drugs,

and remaining involved with convicted felons." On February 8, 2012, the juvenile and domestic relations district (JDR) court terminated Welch's residual parental rights to B.N.G., B.S.G., and C.W. Welch appealed to the circuit court.

On May 8, 2012, the circuit court heard evidence on DSS's petitions to terminate Welch's residual parental rights to her three children. Welch testified that she had not resided with her husband since December 2010 and that her relationship with him was over.

On October 19, 2012, the circuit court terminated Welch's residual parental rights with respect to the two older children, B.N.G. and B.S.G. The circuit court found that B.N.G. was a special needs child and that B.S.G. "has been diagnosed with Post Traumatic Stress Disorder, Developmental Coordination Disorder, anxious moods, and is asthmatic." This Court affirmed the circuit court's decisions regarding B.N.G. and B.S.G. by memorandum opinion dated May 21, 2013. The circuit court withheld its decision on the termination of Welch's residual parental rights with respect to C.W. until the outcome of Welch's federal sentencing hearing was known.

On November 8, 2012, Smith filed a motion requesting that the circuit court rule on the termination of Welch's residual parental rights with respect to C.W. The circuit court again reserved the decision regarding C.W., noting that Welch's anticipated release date from federal custody was July 28, 2013.

Smith and DSS filed a second motion, which was heard on September 5, 2013. Welch had been released from federal custody under terms and conditions. She was living at a half-way house and working at a nursing home. Welch testified that she would be eligible for release to house arrest in November 2013 and that she would continue her job at the nursing home. Welch stated that she had a trust fund to finance housing and support for herself and her child. Welch testified that she had not seen C.W. since February 2011. While incarcerated, Welch completed a parenting

certificate and acted as a mentor to other inmates who suffered drug addiction. Both Welch and her father testified that he stood behind her during the entire period and that he would continue to support and assist her in the future.

The circuit court concluded that DSS failed to prove that terminating Welch's parental rights was in the best interests of C.W. On February 29, 2014 the circuit court entered a final order denying DSS's petition to terminate. These appeals followed.

## II. Analysis

### A. Delay in Entering a Final Order

First, the appellants argue that the circuit court violated C.W.'s statutory right to expeditious review under Code § 16.1-296(D) by withholding judgment regarding the termination of Welch's parental rights. However, it was within the discretion of the trial court to reserve judgment following the May 2012 hearing.[2] Furthermore, this issue is now moot.

"'[T]he general rule [is] that appellate courts do not sit to give opinions on moot questions or abstract matters, but only to decide actual controversies injuriously affecting the rights of some party to the litigation.'" Baldwin v. Commonwealth, 43 Va. App. 415, 421, 598 S.E.2d 754, 757 (2004) (quoting Hallmark v. Jones, 207 Va. 968, 971, 154 S.E.2d 5, 7 (1967)). The issues presented must be "live" at all stages of review. Id. "'Courts are not constituted . . . to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative.'" Id. (quoting Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998)). Where there is no actual controversy, the case will be dismissed as moot. Id. And even, as is the case here,

---

[2] The Supreme Court has repeatedly held that "'during the interval between the conclusion of the evidence and the entry of a written order . . . [a trial court has] the inherent power, in the exercise of its discretion, to take the matter under advisement and to continue the case for future disposition.'" Starrs v. Commonwealth, 287 Va. 1, 7, 752 S.E.2d 812, 815 (2014) (quoting Hernandez v. Commonwealth, 281 Va. 222, 226, 707 S.E.2d. 273, 275 (2011)).

"when the parties do not raise the issue of mootness, appellate courts should raise the issue *sua sponte* when the record does not present a live case or controversy." Id. at 421-22, 598 S.E.2d at 757.

The circuit court's ultimate termination decision regarding C.W., entered on February 19, 2014, rendered moot any justiciable challenge to the court's delay in making that decision. See Najera v. Chesapeake Dep't of Soc. Servs., 48 Va. App. 237, 241, 629 S.E.2d 721, 722 (2006) ("[A] termination decision, if final and unappealed, moots any justiciable contest over a prior decision to approve DSS's foster care plan recommendations."). Because the circuit court decided to deny DSS's petition to terminate, it "no longer matters" how much time it took to do so. Id. at 241, 629 S.E.2d at 723. There is no relief that this Court can grant appellants, even if we were to agree that the circuit court should not have delayed its decision, because the decision has already been made.[3] Therefore, the appeal as to the question of whether the circuit court should have made its decision at an earlier time is dismissed as moot. See id.

## B. Refusal to Terminate Parental Rights

Next, appellants argue that the circuit court erred in denying DSS's petition to terminate Welch's parental rights to C.W. We disagree.

___

[3] This does not leave the parties without a remedy in future cases. Parties claiming that a judge has unreasonably delayed rendering a decision may seek relief by filing a complaint under Code § 17.1-107, which provides in part that:

> In any civil action, a judge of a circuit court who fails to act on any matter, claim, motion, or issue that has been submitted to the court for a decision or render a final decision in the action shall report, in writing, to the parties or their counsel on any such matter, claim, motion, issue, or action held under advisement for more than 60 days after such submission stating an expected time of a decision. In any civil action in which a judge fails to report as required by this section or fails to render a decision within the expected time stated in the report, any party or their counsel may notify the Chief Justice of the Supreme Court.

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Kilby v. Culpeper Dept. of Soc. Services, 55 Va. App. 106, 110, 684 S.E.2d 219, 220-21 (2009). "[W]here, as here, the court hears the evidence *ore tenu*s, its finding is entitled to the same weight accorded a jury verdict, and it will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). "'[W]e presume the circuit court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" T.S.G. v. B.A.S., 52 Va. App. 583, 588, 665 S.E.2d 854, 857 (2008) (quoting Toms v. Hanover Dep't of Social Servs., 46 Va. App. 257, 265-66, 616 S.E.2d 765, 769 (2005)).

The United States Supreme Court has recognized that the Due Process Clause protects the "fundamental right of parents to make decisions concerning the care, custody and control of their children." Troxel v. Granville, 530 U.S. 57, 65 (2000). That "liberty interest . . . does not evaporate simply because they have not been model parents . . . . [P]arents retain a vital interest in preventing the irretrievable destruction of their family life." Santosky v. Kramer, 455 U.S. 745, 753 (1982).

This Court has recognized that the termination of this fundamental right is a "'grave, drastic, and irreversible action.'" Helen W. v. Fairfax Cnty. Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). "'While it may be occasionally necessary to sever the legal relationship between parent and child, those circumstances are rare.'" Id. (quoting Weaver v. Roanoke Department of Human Resources, 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980)). When considering petitions for termination of parental rights,

> "we must have a respect for the natural bond between children and
> their natural parents. The preservation of the family, and in

particular the parent-child relationship, is an important goal for not only the parents but also government itself . . . . Statutes terminating the legal relationship between parent and child should be interpreted consistently with the governmental objective of preserving, when possible, the parent-child relationship."

Richmond Dep't of Soc. Servs. v. L.P., 35 Va. App. 573, 580, 546 S.E.2d 749, 752-53 (2001) (quoting Weaver, 220 Va. at 926, 265 S.E.2d at 695). "'[T]he rights of parents may not be lightly severed but are to be respected if *at all* consonant with the best interests of the child.'" Ward v. Faw, 219 Va. 1120, 1124, 253 S.E.2d 658, 661 (1979) (quoting Malpass v. Morgan, 213 Va. 393, 400, 192 S.E.2d 794, 799 (1972) (emphasis added)). And the state cannot "'infringe on the fundamental right of parents . . . simply because a state judge believes a better decision could be made.'" Dung Thi Thach v. Human Servs. Dep't, 63 Va. App. 157, 173, 754 S.E.2d 922, 930 (2014) (quoting Copeland v. Todd, 282 Va. 183, 199, 715 S.E.2d 11, 19-20 (2011)). Finally, the Supreme Court has long recognized that when it comes to the custody of children, "the law presumes that the child's best interests will be served when in the custody of its parent." Judd v. Van Horn, 195 Va. 988, 996, 81 S.E.2d 432, 436 (1954).

Code § 16.1-283(B) and (C) governs the termination of parental rights. In this case, DSS sought termination under subsection (C)(1) and (C)(2).

Code § 16.1-283(C) provides that

> [t]he residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child *and* that:

> 1. The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other

> rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship . . . ; or
>
> 2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end . . . .

(Emphasis added).

"Code § 16.1-283(C) speaks in the conjunctive." L.G. v. Amherst Cnty. Dep't of Soc. Servs., 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003) (quoting Roanoke City Dep't of Soc. Servs. v. Heide, 35 Va. App. 328, 335-36, 544 S.E.2d 890, 893 (2001)).  It follows that under Code § 16.1-283(C) the "trial judge must make two separate inquires in order to terminate parental rights." Richmond Dep't of Soc. Servs. v. Crawley, 47 Va. App. 572, 579, 625 S.E.2d 670, 673 (2006).  The court must find that DSS has met its burden of proving, by clear and convincing evidence:  (1) that termination is in the best interests of the child; *and* (2) that the parent has not maintained a relationship with the child *or* remedied the conditions that led to foster care placement. L.G., 41 Va. App. at 56, 581 S.E.2d at 889.  Whether the second prong is met is determined by reference to the statutory time frames. Crawley, 47 Va. App. at 579, 625 S.E.2d at 673.

However, because Code § 16.1-283(C) requires a two-pronged inquiry, a parent's failure to comply with the statutory time frames of (C)(1) or (C)(2) will never be dispositive. See id.  DSS must always *also* prove by clear and convincing evidence the first prong:  that termination is in the child's best interests. See id.  And in evaluating the best interests of the child, "the factfinder may consider evidence before or after the twelve-month time period." Thach, 63 Va. App. at 171, 754 S.E.2d at 929.  To "temporally restrict the trial court's consideration" of the parent-child relationship to the statutory periods in (C)(1) and (C)(2) would "'deny the fact finder the

- 8 -

opportunity to evaluate the present best interests of the child.'" L.G., 41 Va. App. at 57, 581 S.E.2d at 889 (quoting Heide, 35 Va. App. at 337, 544 S.E.2d at 894). Accordingly, a court may determine "'that a parent's delayed, but nonetheless substantial, progress may overcome the time delay.'" Thach, 63 Va. App. at 171, 754 S.E.2d at 929 (quoting L.G., 41 Va. App. at 57, 581 S.E.2d at 889-90). "'We will not deprive the trial court of the opportunity to weigh the rights of the parents and the best interests of the child.'" L.G., 41 Va. App. at 57, 581 S.E.2d at 890 (quoting Heide, 35 Va. App. at 337, 544 S.E.2d at 894).

Here, the appellants claim that termination of parental rights would have been proper under (C)(1) or (C)(2) because DSS proved by clear and convincing evidence that Welch did not maintain contact with C.W. for a period of more than six months after foster care placement and Welch did not correct the conditions that caused C.W. to be placed in foster care within twelve months of such placement. These arguments fail to recognize that termination is not necessarily or automatically in the best interests of the child, even where these statutory requirements are met by DSS. See Crawley, 47 Va. App. at 582, 625 S.E.2d at 675 ("The lack of a definite timeline in which a parent will be able to comply with social services' plan is a relevant factor under the statute, but is not alone dispositive of the inquiry the trial judge must make under the statute."). In denying the petition to terminate in this case, the circuit court explicitly stated that "[t]he preservation of the family is of utmost importance, especially when it is in the best interest of the child to do so. . . . The Court is looking at what is in the best interest of the child and permanency." Thus, the appellants cannot prevail simply by proving that Welch failed to comply with the requirements of (C)(1) or (C)(2). Rather, the appellants must persuade this Court that, as a matter of law, the circuit court erred in finding that termination was not in the best interests of C.W. This, they simply have not done.

This Court has said that "there is no simple, mechanical, 'cut and dried' way" to apply the best interests of the child standard. Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988). Instead, "the question must be resolved . . . in light of the facts of each case." Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407 (1982).

> "In determining what is in the best interests of the child, a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children."

Harrison v. Tazewell County Dep't of Soc. Servs., 42 Va. App. 149, 161, 590 S.E.2d 575, 581-82 (2004) (quoting Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986)).

The circuit court considered appropriate factors in making its decision. In its December 20, 2013 opinion letter, the court discussed Welch's employment situation and financial ability to support C.W. The court also noted that Welch attended parenting classes and accepted responsibility for having her children taken away from her. The court found that "there is no evidence before the [c]ourt that the mother ever abused or neglected this child, except for her criminal enterprise . . . ." As to C.W.'s condition, the court found that "[t]he evidence is that [C.W.] appears happy, well-adjusted, and is progressing normally at Head Start . . . . He does not appear to have any special needs." The court properly placed great weight on preservation of the family and stated that it "consider[ed] all relevant facts" in making its decision.

Given that the best interests of the child analysis is highly fact-sensitive and discretionary, overturning the circuit court's decision in a case such as this regarding the best interests of the child would necessarily require this Court to improperly substitute its judgment for that of the circuit

- 10 -

court. See Simmons v. Simmons, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986).[4] There simply is no bright line standard that this Court can apply to conclude that as a matter of law, the circuit court erred in determining that termination was not in the best interests of the child. Instead, we must presume that the circuit court made its determination based on the best interests of the child. T.S.G., 52 Va. App. at 588, 665 S.E.2d at 857. Here, because the circuit court relied on appropriate factors and pointed to some evidence supporting its decision, this Court cannot hold that the circuit court's best interests determination was "plainly wrong" or "without evidence to support it." Martin, 3 Va. App. at 20, 348 S.E.2d at 16.

The appellants argue that the circuit court improperly distinguished C.W. from his siblings in deciding his best interests. However, this Court has repeatedly affirmed decisions terminating a parent's right to only some of her children. See Fauquier County Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 717 S.E.2d 811 (2011); Norfolk Div. Soc. Servs. v. Hardy, 42 Va. App. 546, 593 S.E.2d 528 (2004). The parent-child relationship is to be preserved whenever possible, even where the parent's relationship with his or her other children must be terminated. Welch's two older children, B.N.G. and B.S.G., witnessed Welch's abusive relationship with her husband. C.W., however, was only five months old when he was removed from Welch's care. The circuit court found that B.N.G. was a special needs child and that B.S.G. suffered from post traumatic stress disorder and anxiety. As a result, both older children were in need of special care that Welch could not provide. C.W., though, did not appear to need the specialized therapy that the two older children required. C.W. was progressing normally at a regular foster care home and was reported to

---

[4] Indeed, the appellants have not cited a single case in which this Court has reversed the denial of a petition for termination on the grounds that termination would have been in the best interests of the child. Nor has this Court's research revealed any such case.

be happy and healthy. Thus, the circuit court had credible factual basis for distinguishing C.W. from his siblings.

The appellants also argue that the circuit court erred in finding that termination was not in C.W.'s best interests because Welch did not present evidence proving that she had the ability to parent C.W. However, DSS, not Welch, bore the burden of proving that parental rights should be terminated. When parents appeal to the circuit court from a final order of the JDR court terminating residual parental rights under Code § 16.1-283, the burden of proof is on DSS to demonstrate that the parent's residual parental rights should be terminated. See Walker v. Dep't of Public Welfare, 223 Va. 557, 562, 290 S.E.2d 887, 890 (1982).

> [T]he termination of parental rights . . . requires that DHS establish by clear and convincing evidence that termination of a parent's right is the only reasonable and appropriate recourse—it does not require a parent to prove by clear and convincing evidence that he should retain his fundamental liberty interest in the custody of his child.

Thach, 63 Va. App. at 174, 754 S.E.2d at 930. Thus, the appellants' argument that Welch did not present certain evidence supporting her ability to parent C.W. is irrelevant. She was entitled to rely on the strong presumption that it was in C.W.'s best interests to ultimately be returned to his parent. DSS failed to meet its burden of proof and cannot make up for that failure on appeal by arguing that Welch's presentation of evidence was lacking.

## III. Conclusion

In summary, the trial court held that the DSS failed to prove, by clear and convincing evidence, that it was in the best interests of C.W. to terminate Welch's parental rights. We cannot say that the evidence as to the best interests of the child, viewed in a light most favorable to Welch,

was so overwhelming that this decision was plainly wrong.  Accordingly, we affirm in part and

dismiss in part.

<u>Affirmed, in part and</u>
<u>dismissed in part.</u>