UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Athey and Senior Judge Clements

CHRISTOPHER RAY THOMPSON

MEMORANDUM OPINION[*]
v.      Record No. 0798-19-3                          PER CURIAM
                                                     NOVEMBER 5, 2019

DALE EUGENE GILLESPIE AND
 PATTY ANN GILLESPIE

FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Robert M.D. Turk, Judge

(R. Christopher Munique; Lacy, Campbell & Munique, PC, on
brief), for appellant.  Appellant submitting on brief.

(R. Cord Hall, on brief), for appellee.  Appellee submitting on brief.


        Christopher Ray Thompson appeals a final order of adoption.  Thompson argues that the

circuit court erred by finding that the evidence presented by the adoptive parents, the Gillespies,[1] at

trial was sufficient to show by clear and convincing evidence that he was withholding his consent to

the adoption contrary to the child's best interests.  Upon reviewing the record and briefs of the

parties, we conclude that the circuit court did not err.  Accordingly, we affirm the decision of the

circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Patty Ann Gillespie is the child's maternal grandmother; Dale Eugene Gillespie is the child's maternal step-grandfather.

BACKGROUND[2]

"Because the circuit court heard evidence *ore tenus*, its factual findings are 'entitled to the same weight accorded a jury verdict[] and . . . will not be disturbed on appeal unless plainly wrong or without evidence to support' them." Geouge v. Traylor, 68 Va. App. 343, 347 (2017) (quoting Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 44 (2014)). We recite the evidence in the light most favorable to the Gillespies, as they prevailed in the circuit court. Id.

Thompson and Casey Nicole Cantrell are the biological parents of the child who is the subject of this appeal. The child was born exposed to morphine and remained in the hospital for a month after her birth in August 2015. The biological parents agreed to place the child with the Gillespies because at the time of the child's birth, the biological parents did not have a stable residence and were unemployed. The child has resided continuously with the Gillespies since her release from the hospital.

The Family Court of Mercer County, West Virginia granted guardianship of the child to the Gillespies and ordered that the biological parents could have one supervised visit per month with the child. Thompson visited with the child once in November 2016 and failed to appear for two other scheduled visits. Aside from the one visit, Thompson has not visited with the child.

On July 18, 2017, the Montgomery County Juvenile and Domestic Relations District Court (the JDR court) entered an order granting custody of the child to the Gillespies. The JDR court did not award any visitation to Thompson or the child's biological mother.

---

[2] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

In October 2018, the Gillespies petitioned to adopt the child. At the time, Thompson was incarcerated. The biological mother consented to the adoption, but Thompson objected to the adoption.

The Gillespies and Thompson appeared before the circuit court on January 16, 2019. They testified that they were in good health and had the financial means to support the child. Neither had a criminal record or child protective services history. The Gillespies had not received any support from Thompson. Their phone number and address, which Thompson knew, had been the same since the child's birth, but they had not heard from Thompson. The Gillespies confirmed that they had taken care of the child's needs, participated in her developmental milestones, and wanted to adopt her.

Thompson testified that he had been convicted of grand larceny and four probation violations and was incarcerated at the time of the circuit court hearing. He expected to be released from incarceration in "two to three months" following the circuit court hearing. He planned to obtain a job and a residence upon his release. Thompson acknowledged that he had had substance abuse issues and had been using drugs at the time of the child's birth. Thompson testified, however, that he had participated in substance abuse treatment before his most recent incarceration. Thompson explained that he did not have a driver's license, which impacted his ability to visit with the child. Thompson objected to the adoption and expressed his desire to take care of the child.

After hearing all of the evidence, the circuit court found that Thompson had been incarcerated for two years and one month of the child's life and had made "zero efforts" to be a part of her life. The circuit court noted that Thompson had visited the child once approximately twenty-six months before the circuit court hearing. The circuit court found that Thompson could not assume full custody of the child at the time of the hearing and that it was unknown as to whether he could in the future. The circuit court found that the child did not know Thompson and that it

would be "catastrophic" to the child to disrupt her "safe and stable" living situation with the Gillespies. The circuit court held that Thompson was withholding his consent to the adoption contrary to the best interests of the child. The circuit court further found that the Gillespies had provided the child with an "appropriate, stable environment" and they had met all of the child's physical and emotional needs. The circuit court approved the petition for adoption and entered the final order of adoption. This appeal followed.

ANALYSIS

Thompson argues that the circuit court erred by granting the Gillespies' petition for adoption and finding that the evidence was sufficient to prove that he was withholding his consent to the adoption contrary to the child's best interests.

"'[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by' the United States Supreme Court." Geouge, 68 Va. App. at 368 (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000) (plurality opinion)). "We have consistently held that to grant a petition for adoption over a birth parent's objection, there must be more than a mere finding that the adoption would promote the child's best interests." Copeland v. Todd, 282 Va. 183, 197 (2011) (citing Malpass v. Morgan, 213 Va. 393, 398-99 (1972)). "Virginia's statutory scheme for adoption, including Code §§ 63.2-1205 and -1208, defines the best interests of the child in terms that require more expansive analysis than when the contest is between two biological parents." Id. at 199.

Code § 63.2-1205 states:

> In determining whether the valid consent of any person whose consent is required is withheld contrary to the best interests of the child, . . . the circuit court . . . shall consider whether granting the petition pending before it would be in the best interest of the child. The circuit court . . . shall consider all relevant factors, including the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the

- 4 -

> birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

The Gillespies presented evidence regarding the factors in Code § 63.2-1205. Thompson had not filed a petition for custody or visitation. He was unable to assume custody or care for the child because he was incarcerated. The Family Court of Mercer County, West Virginia previously awarded visitation to Thompson, but he had visited her only once and missed two other scheduled visits. Thompson had not attempted to visit with or contact the child since November 2016. There was no evidence that the Gillespies had thwarted his efforts to establish a relationship with the child. The circuit court found that Thompson had no relationship with the child. The child had been living with the Gillespies since she was one month old, and the circuit court found that the Gillespies had provided the child with a "safe and stable environment." The circuit court found that any change in the child's living situation would be "catastrophic." Considering all of these factors, the circuit court did not err in finding that the adoption of the child by the Gillespies was in the child's best interests and that Thompson was withholding his consent to the adoption contrary to the child's best interests. "When, as here, the circuit court reviewed the statutory factors, based its findings on evidence presented, and did not commit legal error, there is no basis for this Court to reverse its decision." Geouge, 68 Va. App. at 372.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.