COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff, and Senior Judge Annunziata

UNPUBLISHED

JONATHAN RAE HUGULEY, JR.

                                         MEMORANDUM OPINION[*]

v.       Record No. 0159-20-3                  PER CURIAM
                                          JUNE 30, 2020

DAWN PHOENIX

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Joel R. Branscom, Judge

(Ruth Blaskis, Guardian *ad litem*, on brief), for appellant.

(Malcolm McL. Doubles; Robin Dearing, Guardian *ad litem* for the
minor child; Wiegandt & Doubles, P.C., on brief), for appellee.

Jonathan Rae Huguley, Jr. appeals a final adoption order granting the adoption petition of

Dawn Phoenix, the child's maternal aunt. Huguley argues that the circuit court erred in finding that

his "consent to the adoption was withheld contrary to the best interests of the child, as set forth in

Code § 63.2-1205." Upon reviewing the record and briefs of the parties, we conclude that this

appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court. See

Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"Because the circuit court heard evidence *ore tenus*, its factual findings are 'entitled to the same weight accorded a jury verdict[] and . . . will not be disturbed on appeal unless plainly wrong or without evidence to support' them." Geouge v. Traylor, 68 Va. App. 343, 347 (2017) (quoting Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 44 (2014)). We recite the evidence in the light most favorable to appellee, Phoenix, as she prevailed in the circuit court. Id.

Huguley and Deidra Phoenix (Deidra) are the biological parents to the child who is the subject of this appeal. In 2012, Phoenix, who is Deidra's sister and the child's maternal aunt, was concerned about the domestic violence between the parents and their ability to care for the child, so she filed a petition for custody of the child.[2] The Botetourt County Juvenile and Domestic Relations District Court granted joint legal custody of the child to Phoenix and Padgette and William Campbell.[3] On October 3, 2014, the circuit court granted Phoenix full legal and physical custody of the child. On March 20, 2019, Phoenix filed a petition for close relative adoption under Code § 63.2-1242.3. Huguley filed an answer requesting a denial of the petition.

On October 23, 2019, the parties appeared before the circuit court. Phoenix testified that Huguley had not contacted her to ask about the child "for several years." Phoenix had stopped contacting Huguley because she was concerned that he "was trying to teach [ the child] white supremacist views." Phoenix recognized that the child needed therapy and sought the assistance of

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] The child was one-year-old at the time.

[3] The record does not specify the child's relationship to the Campbells.

a licensed clinical psychologist. The psychologist testified that Phoenix was "an excellent caregiver," and that in her professional opinion, the adoption was in the child's best interest.

Huguley admitted that Phoenix "had taken good care of [the child]" and that he had not visited with the child in "over four years." He had been incarcerated since 2017, and his anticipated release date was in seven years. Huguley testified that he previously was incarcerated from 2013 to 2017, and Kelly Broughman, the child's paternal grandmother, brought the child to see him in jail "several times."[4] Huguley claimed that when he was released in 2017, he contacted Phoenix about visiting the child. Huguley testified that he had intended to file a petition for visitation, but explained he was incarcerated two months after he was released. He claimed he had written "several letters" to the child, but received no response. Huguley spoke with the child once in 2019, when the child was visiting Broughman. Huguley explained that he "was in segregation and had been unable to contact [the child] recently." Huguley testified that he "wished to resume contact with [the child] and to have a relationship with him."

After hearing all of the evidence and the parties' arguments, the circuit court granted the petition for close relative adoption. The circuit court found that Huguley was "withholding his consent [to the adoption] contrary to the best interest of [the child], pursuant to [Code] §§ 63.2-1203 & 63.2-1205."[5] This appeal followed.

## ANALYSIS

Huguley argues that the circuit court erred by granting the petition for adoption under Code § 63.2-1205. Huguley contends that the circuit court "did not give weight to all relevant factors [under Code § 63.2-1205] and did not weigh the factors appropriately," especially the child's

---

[4] Broughman had been granted supervised visitation with the child in 2016.

[5] The circuit court also found that mother had withheld her consent to the adoption contrary to the best interests of the child. Mother did not appeal the final adoption order.

relationship with his father and his family. Huguley asserts that he did not withhold his consent to the adoption contrary to the child's best interests.

"'[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by' the United States Supreme Court." Geouge, 68 Va. App. at 368 (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000) (plurality opinion)). "We have consistently held that to grant a petition for adoption over a birth parent's objection, there must be more than a mere finding that the adoption would promote the child's best interests." Copeland v. Todd, 282 Va. 183, 197 (2011) (citing Malpass v. Morgan, 213 Va. 393, 398-99 (1972)). "Virginia's statutory scheme for adoption, including Code §§ 63.2-1205 and -1208, defines the best interests of the child in terms that require more expansive analysis than when the contest is between two biological parents." Id. at 199.

Code § 63.2-1205 states, in relevant part, as follows:

> In determining whether the valid consent of any person whose consent is required is withheld contrary to the best interests of the child, . . . the circuit court . . . shall consider whether granting the petition pending before it would be in the best interest of the child. The circuit court . . . shall consider all relevant factors, including the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

The record demonstrates that the circuit court considered the evidence presented and the factors delineated in Code § 63.2-1205. The circuit court found that Huguley was "unable, for the foreseeable future because he has been incarcerated almost continually since [the child] was a few months old, to obtain physical custody or to care for [the child], either financially or otherwise."

Huguley recognizes that his "ability to maintain a substantial relationship with the child was admittedly limited due to his incarceration." His expected release date from incarceration was seven years after the circuit court hearing, by which time the child would be approximately fifteen years old.

The circuit court further found that Huguley had "made no effort [to] obtain custody and his efforts ha[d] not been thwarted by anyone other [than] himself." Huguley had never filed a petition for visitation; he claimed to have attempted to do so but was arrested before he could file anything. Phoenix testified that Huguley had had no contact with the child for several years. Before Huguley was transferred to the Department of Corrections, Broughman brought the child to visit Huguley in jail, but he admittedly had not visited with the child for "over four years." Huguley spoke with the child by telephone once in 2019, when the child visited Broughman; however, Huguley had been unable to contact the child "recently" because he was in segregation.

In addition, Huguley argues that the circuit court did not "appropriately weigh the importance of the child's relationship with his father, brother, and grandmother." In 2019, Huguley and Deidra had another son, whom the child met once on July 28, 2019. While Deidra and Broughman testified that the child was "excited about having a brother," Phoenix described the child as "very upset after this meeting." Phoenix and the child's psychologist also testified that the child's behavior became "disruptive" and "deteriorated" after he visited with Broughman. Huguley emphasizes that Broughman had "been in [the child's] life consistently since he was born" and had "filed several petitions since 2014." The record, however, proves that Broughman was awarded only supervised visitation with the child and that her visitation was suspended several times due to her failure to comply with the court order.

Moreover, the circuit court considered the "age of the child and the duration of the current custodial arrangement." At the time of the circuit court hearing, the child was eight years old, and

Phoenix had had full legal and physical custody of the child for five years and had been a custodian of the child since he was a year old. The child's guardian *ad litem* reported that the child was "happy and in a stable home" and wanted Phoenix to adopt him. The circuit court found that Phoenix was "financially able, morally suitable, in satisfactory physical and mental health, and [was] the proper person to maintain, care for and train said child." The circuit court held that "a change in the current custody arrangement would be contrary to the child's best interests."

Considering the record before us, the circuit court did not err in finding that the adoption was in the child's best interests and that Huguley had withheld his consent to the adoption contrary to the child's best interests. "When, as here, the circuit court reviewed the statutory factors, based its findings on evidence presented, and did not commit legal error, there is no basis for this Court to reverse its decision." Geouge, 68 Va. App. at 372.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.