COURT OF APPEALS OF VIRGINIA

Present:   Judges Atlee, Causey and Senior Judge Haley

ASHLEY STONE COUSINS

v.      Record No. 1225-21-2

JOHN WILLIAM BRANDT AND
  BEVERLEY ANNE BRANDT

MEMORANDUM OPINION*
PER CURIAM
MAY 3, 2022

FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Edward A. Robbins, Jr., Judge

(Cecilie B. Hamilton, on brief), for appellant.  Appellant submitting
on brief.

No brief or argument for appellees.


Ashley Stone Cousins ("mother") appeals a final order of adoption.  Mother argues that the

circuit court erred in concluding that her consent to adoption was unreasonably withheld.  Upon

reviewing the record and appellant's brief, we conclude that the circuit court did not err.

Accordingly, we affirm the decision of the circuit court.

BACKGROUND[1]

"Because the circuit court heard evidence *ore tenus*, its factual findings are 'entitled to the

same weight accorded a jury verdict[] and . . . will not be disturbed on appeal unless plainly wrong

or without evidence to support' them." *Geouge v. Traylor*, 68 Va. App. 343, 347 (2017) (quoting

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The record in this case was sealed.  The appeal necessitates unsealing relevant portions of the record to resolve the issues mother has raised.  Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion.  Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

*Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 44 (2014)). We recite the evidence in the light most favorable to appellees, John Brandt and Beverley Brandt ("grandparents"), as they prevailed in the circuit court. *Id.* In addition, "[u]nder basic principles of appellate review, we may not go beyond the record developed in the trial court." *Boyd v. Cty. of Henrico*, 42 Va. App. 495, 505 n.4 (2004) (*en banc*).

Mother is the biological mother to the child who was the subject of the adoption proceedings. Grandparents are the paternal grandparents to the child. Their son, Jesse Lee Cousins ("father"), is the biological father of the child.

The child was born in 2010. Grandparents have been in the child's life since the child was born and have always had a "good relationship" with the child. Mother was the "primary parent" following the child's birth. Father worked long hours. Mother and father raised the child together until they had a "nasty break up" and divorced in 2014. Father obtained a protective order against mother. Father was granted custody of the child. He and the child moved in with grandparents when the child was four years old. Grandparents became the child's primary caretakers, as father continued working long hours.

Initially, mother saw the child "at least every weekend," but the visits lessened once mother entered a new romantic relationship. The child wore a GPS device during these visitations, a requirement agreed upon by mother and father during their divorce proceedings. Mother would text father "periodically" to arrange for visits with the child, some of which would end with mother and father arguing. With father's permission, mother purchased the child a Kindle Fire tablet in 2019 to maintain communication with the child. Father decided when the child could communicate with mother on the device, although mother never had a video chat with the child on the tablet. Grandparents subsequently purchased a cell phone for the child, so they could contact each other in

case of emergency. Mother attempted to contact the child via social media and text message.[2] Grandparents asked mother not to contact the child on his cell phone and explained that if mother wanted to talk with the child, she had to contact him through his father or them.

Father died from a heart attack in February 2020. Grandparents texted mother to inform her of the death, but they did not receive a response. Mother contacted grandparents through social media after she learned about father's death on Facebook; she provided grandparents with her new address and telephone number. Grandparents took the child to counseling following father's death "to make sure he was adjusting." Mother "was going to try to pick [the child] up" but didn't want to "uproot" or "traumatize" him. In the time leading up to father's death, mother saw the child at least once a year.

Following father's death, grandparents met with mother to inform her that they were filing for emergency custody of the child. Mother attended the initial hearing at the City of Colonial Heights Juvenile and Domestic Relations District Court ("the JDR court") in June 2020. The JDR court ordered that mother could visit with the child every third Sunday from 1:30 to 3:30 p.m. Mother arrived at the first visitation at grandparents' home, but only stayed for one hour due to disagreements between mother and grandparents. Mother did not attend any other scheduled visitations and did not contact grandparents explaining her absence. The JDR court granted full custody of the child to grandparents. Mother did not attend the hearing, and the JDR court did not order visitation for mother.

Mother had no further interaction with the child. In August 2020, grandparents petitioned the circuit court for adoption of the child. Thereafter, mother contacted grandparents once and asked to visit the child during Christmas 2020. On the advice of counsel, grandparents declined mother's request and informed mother that "it wasn't in the best interest of the child" to visit during

---

[2] Grandparents considered mother's social media posts inappropriate for the child.

- 3 -

Christmas. Outside of this one instance, grandparents had never denied mother access to the child. Other than mother's contact at Christmas, from June 2020 until the time of the circuit court hearing, mother did not visit the child.

At the hearing, mother expressed her opposition to the adoption but acknowledged that she was not in a position to take custody of the child. Mother testified that she is also the parent to a daughter, born in 2019, who, at the time of trial, was living with her maternal grandmother. Mother's daughter was removed from her custody after a court found that there was drug paraphernalia in mother's home and drug use in front of mother's daughter. Mother was incarcerated at the time of the circuit court hearing and admitted that she had "been a drug addict on-and-off." Mother testified that she had been "on-and-off in recovery" and had faced a number of criminal charges. Mother stated that she was "a binge user" and would have "a weekend binge every few months." Mother claimed she was "trying to rehabilitate [her] life and focus on moving forward with both [her] children."

Grandparents testified that they had been very engaged in the child's life, including the child's schooling and sporting events. Mother had never attended any school events and had attended only one sports game. The child was active in church, had many friends, and was doing very well in school. Grandparents testified that they provided the child a stable home, were financially capable of meeting the child's needs, including private school tuition and health insurance, and had a college savings plan for the child. Grandparents wanted the child "to continue to be comfortable in [their] home."

After hearing the parties' evidence and arguments, the circuit court reviewed the standards delineated in Code § 63.2-1205 and found that mother had withheld her consent to the adoption contrary to the child's best interests. The circuit court granted grandparents' petition for adoption and entered the final order of adoption on September 9, 2021. This appeal follows.

ANALYSIS

Mother argues that the circuit court erred in finding that her consent for adoption was unreasonably withheld, and asks this Court to overturn the circuit court's order and deny the grandparents' petition for adoption. Mother "argues that there is no evidence that a continuation of this present, very limited, relationship, or any future broadening of this relationship would be detrimental in any way, or disruptive to the minor child." Specifically, mother asserts that the trial court erred in disregarding evidence that her attempts to assert her parental rights were thwarted by other people and that she had enjoyed a close relationship with the child during the early years of the child's life. We reject mother's arguments and find that the evidence was sufficient to support the circuit court's finding that the adoption was in the child's best interests.

"'[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by' the United States Supreme Court." *Geouge*, 68 Va. App. at 368 (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion)); *see also Berry v. Barnes*, 72 Va. App. 281, 288 (2020). "Generally, consent of the birth parents is necessary for an adoption in Virginia. Code § 63.2-1202. Virginia's statutory scheme, however, allows for adoptions without the consent of a parent in certain, specifically delineated circumstances." *Geouge*, 68 Va. App. at 369. "Code § 63.2-1203(A) sets forth one such circumstance, providing that '[i]f, after consideration of the evidence, the circuit court finds that the valid consent of any person . . . whose consent is required is withheld contrary to the best interests of the child as set forth in § 63.2-1205, . . . the circuit court may grant the petition without such consent.'" *Id*. (quoting Code § 63.2-1203(A)).

Code § 63.2-1205 states, in relevant part, as follows:

> In determining whether the valid consent of any person whose consent is required is withheld contrary to the best interests of the child, . . . the circuit court . . . shall consider whether granting the petition pending before it would be in the best interest of the child.

The circuit court . . . shall consider all relevant factors, including the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

"[T]he Supreme Court has held that '[t]he eight factors in Code § 63.2-1205 . . . focus on *both* the parent and child and therefore compel a court to consider whether a parent's unfitness would be harmful to the child's welfare.'" *Geouge*, 68 Va. App. at 370 (quoting *Copeland v. Todd*, 282 Va. 183, 199 (2011)). Consequently, "the Supreme Court concluded that an adoption that occurs over a parent's objection pursuant to Code §§ 63.2-1203 and 63.2-1205 survives 'constitutional due process scrutiny because [the statutory requirements] encompass far more than mere consideration of the child's best interests as defined in cases involving a contest between natural parents.'" *Id.* (alteration in original) (quoting *Copeland*, 282 Va. at 200).

The record demonstrates that the circuit court considered the evidence presented and evaluated all of the statutory factors in concluding that "[the mother's] withholding [of her] consent to the adoption . . . is unreasonable and is contrary to the best interests of the minor child." The circuit court explained that since mother and father divorced, at "every court proceeding thereafter, custody has been awarded to someone other than mother." The circuit court accepted mother's concession that she was not in a position to assume custody of the child, "given her current incarceration status and medical situation." Mother again admits on appeal "that she is not in a place right now where she is seeking custody of" the child. The circuit court noted that mother had seen the child "approximately one time per year until" father's death. The circuit court determined that at the initial custody hearing following father's death, mother had tested positive for fentanyl.

- 6 -

The circuit court found that after the JDR court set a formal visitation schedule, mother visited the child "only one time and thereafter abandoned all attempts to visit with" the child. The circuit court noted that the last time mother cared for the child had been seven-and-a-half years earlier. The circuit court determined that the evidence established that mother is a "drug addict" and that she lacked the ability to care for the child because "[s]he is currently incarcerated, and [had been] suffering through the medical process of addiction . . . for years with multiple attempts at rehabilitation, which have not produced the desired results."

On appeal, mother argues that grandparents thwarted her efforts to assert her parental rights over the child. Although the circuit court acknowledged that "perhaps" mother's parental rights previously had been thwarted by other people, the court concluded that "once a [c]ourt order of visitation was put in place that had a specified visitation schedule that sounded pretty minimal, two hours every three weeks, even that small amount of visitation was not fully exercised." The circuit court explained that "whatever thwarting was going on had been effectively eviscerated and removed" by the court-ordered visitation, and mother did not dispute that she failed to follow through with the visitation schedule and only attended half of one session. Moreover, the circuit court found that mother, despite having notice, failed to attend the subsequent hearing to determine "a more permanent arrangement" for custody and visitation.

Mother also argues that she had been the child's "primary caretaker" and "had a close, loving relationship with her son," up until the child was almost four years old. The circuit court "assume[d], without ruling," that mother had a positive relationship with the child while he was very young. The circuit court noted, however, that the child had been out of mother's care for over seven years and that "the relationship that occurred since that time became increasingly degraded over time," and was especially impacted by mother's drug addiction and incarceration. The circuit court further noted that mother also did not have custody of her other child.

Moreover, the circuit court considered the "age of the child and the duration of the current custodial arrangement." At the time of the circuit court hearing, the child was eleven years old and had been living with grandparents for over seven years. The circuit court concluded that the duration and suitability of the child's custodial environment was "excellent." The circuit court determined that even before father's death, grandparents "were fully involved in the upbringing of [the child], meeting with teachers, coaching and attending his recreational sporting events, involving him in the church[,] and acting in parental roles to the minor child." Finally, the court concluded that "[a]ll parties agree, and the [c]ourt concurs, that to change that child's physical custody would be detrimental if not disastrous."

Considering the record before us, the circuit court did not err in finding that the adoption was in the child's best interests and that mother had withheld her consent to the adoption contrary to the child's best interests. "When, as here, the circuit court reviewed the statutory factors, based its findings on evidence presented, and did not commit legal error, there is no basis for this Court to reverse its decision." *Geouge*, 68 Va. App. at 372.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

*Affirmed*.