COURT OF APPEALS OF VIRGINIA

Present: Judges Chaney, Raphael and Callins
Argued at Richmond, Virginia


PARKER KEEFE PAPPAS

v.      Record No. 0957-21-2

NICOLLE VAN ALLEN AND
  FRANCIS VAN ALLEN                                    MEMORANDUM OPINION* BY
                                                     JUDGE DOMINIQUE A. CALLINS
JENNA VAN ALLEN                                            MAY 23, 2023

v.      Record No. 0981-21-2

NICOLLE VAN ALLEN AND
  FRANCIS VAN ALLEN


FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

Catherine L. Scott (Virginia F. Podboy; The Railside Law Group,
PLLC, on brief), for appellant Parker Keefe Pappas.

Dana Chenevert (Elizabeth C. Brackins; Brackins Law, PC, on
brief), for appellant Jenna Van Allen.

Theresa Rhinehart (Christopher K. Peace, Guardian ad litem for the
minor children, on brief), for appellees.


Jenna Van Allen (mother) and Parker Keefe Pappas (father) appeal the trial court's final

order of adoption. Mother and father (collectively, parents) argue that the trial court erred by

finding the evidence sufficient to grant the adoption over their withheld consent. Specifically,

parents argue that the trial court erred by basing its findings on a preponderance of the evidence

standard, rather than a clear and convincing evidence standard. Parents also argue that the trial

* This opinion is not designated for publication. See Code § 17.1-413.

court erred by failing to evaluate and properly consider all of the statutory factors in Code § 63.2-1205 in determining that their respective consent to the adoption was being withheld contrary to the best interests of the children. For the following reasons, we affirm the judgment of the trial court.

## BACKGROUND[1]

"Because the [trial] court heard evidence *ore tenus*, its factual findings are 'entitled to the same weight accorded a jury verdict[ ] and . . . will not be disturbed on appeal unless plainly wrong or without evidence to support' them." *Geouge v. Traylor*, 68 Va. App. 343, 347 (2017) (second and third alterations in original) (quoting *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 44 (2014)). We recite the evidence in the light most favorable to Nicolle Van Allen and Francis Van Allen (collectively, grandparents), as they prevailed in the trial court. *Id.*

Mother and father are the biological parents to the children, M.P. and E.P., who are the subject of the adoption proceedings. M.P. was born in 2012, and E.P. was born in 2015. Mother and father were married at the time each child was born. Grandparents are mother's biological parents.

Father has an extensive criminal and substance abuse history. Mother also has a criminal history and has been a "heroin addict . . . for years." In July 2014, due to mother's substance abuse and father's incarceration at the time, the Hanover County Juvenile and Domestic Relations District Court (JDR court) awarded joint legal custody of M.P. to mother, father, and grandparents, with supervised visitation to mother and father at the discretion of grandparents. In October 2017, the

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues parents have raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

JDR court entered an order requiring mother and father to have visitation with M.P. every other weekend, with the visitations to increase to three weekends per month beginning in December 2017. The JDR court also ordered mother, father, and grandparents to participate in family therapy. All parties were ordered to remain drug and alcohol free while in the presence of M.P. Father relapsed, and returned to jail in September 2018 on drug-related charges.

By December 2018, the JDR court awarded sole legal and physical custody of M.P. to grandparents, with visitation to mother at the discretion of grandparents. The December 2018 order was silent regarding father's visitation rights but stated that father did not object to the entry of the order. As for E.P., the JDR court awarded joint legal and physical custody to grandparents, with visitation to mother and father at the discretion of grandparents, in June and November 2018.

Father remained incarcerated through May 2020. Upon his release, father completed a six-month residential rehabilitation program. Father communicated over the phone with the children during his incarceration and rehabilitation but had no physical contact with the children during this time. Mother also had had no physical contact with the children for approximately three months leading up to June 2020. Seeking stability for the children, in June 2020, grandparents filed a petition for adoption in the trial court. Mother and father did not consent to the adoption.

On July 16, 2021, the parties appeared before the trial court to be heard on grandparents' petition for adoption. Mother and father reiterated that they did not consent to the adoption. Father testified that, over the previous seven years, he spent four of those years incarcerated. Father could not recall how many times he had been convicted during those seven years. He acknowledged that he had several new criminal charges since his last incarceration that ended in May 2020, including "three possession charges and a DUI." Father did not have a driver's license. Father stated that he presently owned a tile company that provided him the funds necessary to pay $3,000 for an attorney to represent him in his criminal matters. As for his

housing, father testified that he and mother had been sharing a three-bedroom home with a friend for two weeks. According to father, the friend had no history of drug use, and there was an extra room in the house available for the children.

Father testified that grandparents had custody of M.P. for approximately seven years and custody of E.P. "since the last time I went to jail . . . . So a couple of years." When asked if he believed that his children were being well taken care of by grandparents, father stated that Nicolle Van Allen had an "alcohol problem," although Ms. Van Allen denied this allegation later during the hearing. Father also testified that the paternal grandmother had requested visitation with the children; however, father believed that his "mother shouldn't see [his] kids or have any contact with them as long as she's with the guy who was accused of molesting my daughter."

Mother testified that, over the last seven years, she had lived in "five or six" different places, including "recovery houses" due to relapses in her substance abuse. According to mother, she had been in rehabilitation for her substance abuse on three occasions. There was also a period in 2018 when she was a "missing person." In October 2020, mother was hospitalized "with a heart infection." Mother stated that she had been sober for 101 days as of the date of the trial court hearing and felt she was "able to have full custody of the children." As for her income, mother testified that she had been working for father's company by cleaning houses. She earned eighteen dollars per hour, working "about three" days per week. She also collected food stamps. Mother did not have a budget in mind for providing for her children.

According to mother, she had visited with her children on a weekly basis for the last year. She acknowledged that M.P. and E.P. had resided with grandparents for most of their lives. Mother agreed that the paternal grandmother, who had a relationship with an individual accused of molesting M.P., should not have contact with the children. Mother objected to grandparents adopting the children despite mother's "relapses and . . . struggles with drugs." Mother stated,

"I'm really trying . . . . And I just want that chance to prove that I can do it and not just take my rights and terminate them." Neither mother nor father had petitioned for legal custody of the children.

Considering the trauma in the children's lives due to parents' substance abuse and incarceration, grandparents started taking M.P. to therapy in 2016. E.P. began participating in therapy sessions some years later. According to the children's therapist, M.P. was "secure in her relationship with [grandparents] and really looked to them for emotional support, as well as for structure in her home and rules and enforcement of rules." The children's therapist testified that it would be "very emotionally unsettling for the children" if they were placed back in the physical custody of mother and father. The children's therapist added that the children were accustomed to the stability of grandparents' home and that they had "their social peer group . . . in that community. They go to that school. They have a secure emotional connection to [grandparents] and to that community that they have known consistently their entire life." The children's therapist observed the children in grandparents' care to be "healthy," "well-dressed," "well-fed," and "developmentally on track" and had no concerns about grandparents' ability to care for them. The children's therapist also expressed concerns over parents' "immaturity" and "ability to put the children's needs and safety first above all else."

Grandparents expressed similar concerns. According to Francis Van Allen, before the adoption proceedings began, mother and father's involvement in the children's lives was "like a roller coaster." Mr. Van Allen stated that this was because father was incarcerated and mother was "doing drugs, being clean, back and forth and stuff like that." Ms. Van Allen expressed that she wanted stability for the children and that she was "not looking to take the children away from their mom and dad." She explained that as long as mother and father were "clean and sober," they could see the children.

After hearing the evidence and arguments, the trial court reviewed the standards delineated in Code § 63.2-1205 and found that mother and father had withheld their consent to the adoption contrary to the children's best interests. The trial court granted grandparents' petition for adoption and entered the final order of adoption on August 18, 2021. The trial court reasoned that father had been incarcerated for four of the previous seven years and that "both birth parents have had drug issues at least for the past seven years with multiple periods of being sober but relapsing, with multiple rehabilitation periods." The trial court also found that the children were "thriving" in grandparents' custody and that "it would be detrimental to change their physical custody." Mother and father's appeals followed.

## ANALYSIS

### I. Evidentiary Standard

Mother and father argue that the trial court erred by applying a preponderance of the evidence standard, rather than a clear and convincing evidence standard, in determining that mother and father were withholding their consent to the adoption contrary to the best interests of the children under Code §§ 63.2-1203 and -1205.

First, we find that this assignment of error is procedurally defaulted. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of Rule 5A:18 is 'to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals.'" *Friedman v. Smith*, 68 Va. App. 529, 544 (2018) (quoting *Andrews v. Commonwealth*, 37 Va. App. 479, 493 (2002)).

During the hearing, the trial court addressed the evidentiary standard on multiple occasions, without any objection raised by mother and father. At the start of the hearing, the court specifically

asked the parties if "the standard is by a preponderance of the evidence," and mother and father did not respond or make any objection. Then, when issuing its ruling, the trial court stated that certain facts had "been established by a preponderance of the evidence," and mother and father still did not raise any objection. By failing to make a timely objection, mother and father failed to "afford the trial judge a fair opportunity to rule intelligently on [the] objections while there [was] still an opportunity to correct [the] errors in the trial court." *Vasquez v. Mabini*, 269 Va. 155, 163 (2005).

Second, even if mother and father had preserved their evidentiary standard argument for appeal, the record shows that the court ultimately applied the correct evidentiary standard to its ruling. When issuing its ruling, the trial court stated that "the evidence is clear and convincing" that grandparents' home was "a suitable, stable and safe environment for raising these children" and also stated that "the evidence establishes . . . by clear and convincing evidence" that grandparents have "not thwarted the efforts of the parents to . . . assume a proper parental goal. They've encouraged it." And, most importantly, in its final order of adoption, the trial court stated that "the Court finds, based upon clear and convincing evidence, that the birth parents' consents are required but are being withheld contrary to the best interests of the children." It is well-settled that "[a] court speaks through its orders and those orders are presumed to accurately reflect what transpired." *McBride v. Commonwealth*, 24 Va. App. 30, 35 (1997). Therefore, the record shows that the trial court corrected itself and applied the correct evidentiary standard of clear and convincing evidence to its ruling.

## II. Code § 63.2-1205 Factors

Mother and father argue that the trial court erred in finding that their consent to the adoption was being withheld contrary to the best interests of the children, asserting that the trial court failed to evaluate and properly consider all of the statutory factors enumerated in Code § 63.2-1205.

"'[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by' the United States Supreme Court." *Geouge*, 68 Va. App. at 368 (alterations in original) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion)). Since adoption necessarily involves the termination of parental rights, these rights "may not be lightly severed." *Malpass v. Morgan*, 213 Va. 393, 400 (1972). "We consistently have held that to grant a petition for adoption over a birth parent's objection, there must be more than a mere finding that the adoption would promote the child's best interests." *Copeland v. Todd*, 282 Va. 183, 197 (2011). "Virginia's statutory scheme for adoption, including Code §§ 63.2-1205 and -1208, defines the best interests of the child in terms that require more expansive analysis than when the contest is between two biological parents." *Id.* at 199.

Code § 63.2-1205 states, in relevant part, as follows:

> In determining whether the valid consent of any person whose consent is required is withheld contrary to the best interests of the child, . . . the circuit court . . . shall consider whether granting the petition pending before it would be in the best interest of the child. The circuit court . . . shall consider all relevant factors, including the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

Here, the record shows that the trial court properly considered and evaluated all of the factors in Code § 63.2-1205 in concluding that the consent of mother and father was being withheld contrary to the best interests of the children. At the hearing, the trial court explained that grandparents had custody of the children for most of the children's lives and that mother and father had "not filed a petition for a Motion to Amend to grant them custody of the children."

The trial court emphasized that, based on the evidence, grandparents were the "pertinent people that [the children] consider[ed] to be the ones exercising the parental role of them." The trial court also noted that the children were very young—nine and five—and that "the fact that [mother and father] would like to . . . someday be able to provide for [the children] doesn't overcome the fact[] . . . that [grandparents] are the people who have been doing it."

The trial court also explained that the evidence established that mother and father were unable to assume full custody because there was no evidence demonstrating that their living arrangement constituted a proper environment for the children. On the other hand, the trial court found that grandparents' home "has been and continues to be both a suitable, stable and safe environment for raising these children." The trial court also noted that father had pending criminal charges that could result in multiple years of incarceration, and mother, "when not in a recovery house or a rehabilitation program, [has] been at the mercy of whoever she could find to allow her to live with them." These considerations led the trial court to conclude that parents were unable to provide for and assume full custody of the children.

The trial court also found that grandparents did not thwart the efforts of mother and father to resume their parental duties, but instead encouraged it. The trial court emphasized that the quality of the relationship between parents and the children was compromised by parents' own "addiction to substance abuse, the commission of crim[es,] . . . excessive periods of incarceration, rehabilitation programs, stays in recovery houses, [and] living . . . a nomadic life." Lastly, the trial court agreed with the children's therapist that the effect of changing physical custody from grandparents to mother and father would be "emotionally unsettling" for the children. The trial court found that the children were "thriving" in grandparents' custody and that "it would be detrimental to change their physical custody."

Having considered the record before us, we hold that the trial court did not err in finding that the adoption was in the children's best interests and that mother and father had withheld their consent to the adoption contrary to the children's best interests. "When, as here, the [trial] court reviewed the statutory factors, based its findings on evidence presented, and did not commit legal error, there is no basis for this Court to reverse its decision." *Geouge*, 68 Va. App. at 372.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed*.