COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, AtLee and Senior Judge Haley

UNPUBLISHED

LEONIDAS DORESTAL, JR.

MEMORANDUM OPINION[*]
v.      Record No. 0123-20-2                                    PER CURIAM
                                                               JULY 21, 2020
CITY OF FREDERICKSBURG
  DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

(Christopher M. Reyes; Spencer, Meyer & Koch PLC, on brief), for
appellant.

(Robin N. Krueger; Erin K. Dooley, Guardian *ad litem* for the minor
children, on brief), for appellee.


Leonidas Dorestal, Jr. (father) appeals the circuit court orders terminating his parental rights

and approving the foster care goal of adoption. Father argues that the circuit court erred in finding

that it was in the children's best interests to terminate his parental rights and that he had "failed to,

in a reasonable amount of time, remedy substantially the conditions that led to or required foster

care placement." Upon reviewing the record and briefs of the parties, we conclude that this

appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court. See

Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Father and Sehar Asim (mother) are the biological parents to L.D. and O.D.[2] In October 2016, father lived with L.D., mother, and her older children, A.A. and W.A.V.[3] On October 6, 2016, mother and father sought medical attention for W.A.V. because he had sustained multiple injuries, including petechiae on his face and ears and bruises over his body. W.A.V. reported to the police and the City of Fredericksburg Department of Social Services (the Department) that father had picked him up and "slammed him down" on the couch multiple times. W.A.V. also stated that father and mother had hit him after he urinated on himself. Father admitted to the police that he had thrown W.A.V. on the couch three times and held W.A.V.'s legs while mother spanked him because they were angry that W.A.V. had urinated on himself. Father explained that he and mother sought medical care for W.A.V. because they were concerned that he had been hurt. Father was subsequently charged with two counts of malicious wounding, three

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] The circuit court terminated mother's parental rights to L.D. and O.D.; mother did not appeal the rulings. Mother voluntarily terminated her parental rights to her older children, A.A. and W.A.V.

[3] In October 2016, O.D. was not born, L.D. was eight months old, W.A.V. was four years old, and A.A. was six years old. Father is not the biological father to A.A. and W.A.V.

- 2 -

counts of child cruelty, and two counts of felony child abuse. He was released on bond pending his trial.

Due to the injuries to W.A.V. and father's admissions, the City of Fredericksburg Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order of L.D., who was eight months old at the time. The JDR court subsequently adjudicated that L.D. was at risk of being abused or neglected and entered a dispositional order. Father appealed the dispositional order to the circuit court.

Meanwhile, the Department advised father that he had to obtain and maintain "safe, stable and appropriate housing" for at least three months, as well as obtain and maintain employment. Father also had to develop a monthly budget. The Department referred father to parenting classes and couples counseling; it also offered him family reunification services and therapeutic visitation. The Department required father to complete a parent competency and psychological evaluation and follow through with all recommendations. Finally, father had to develop a plan for childcare and remain in contact with the Department.

Father participated in family reunification services and visitations. The social worker noticed that father had "difficulty reading" L.D.'s cues and was unable to calm him. The Department determined that father lacked "basic parenting skills" and insight into developmental stages.

In February 2017, father completed the psychological and parenting evaluation. The evaluator concluded that father had limited intellectual resources and a "low stress or frustration tolerance." The evaluator found that father did "not show the ability to function in an independent fashion and to provide safe and effective parenting without supervision or support." The evaluator opined that it was "unlikely that any kind or amount of services [could] bring [father] to the point where he can provide safe and effective parenting on his own."

In April 2017, mother gave birth to O.D., and a couple of days after his birth, the Department removed O.D. from mother and father's care. On May 4, 2017, the JDR court entered a preliminary child protective order and returned O.D. to his parents, but ordered that father could have supervised visitation only. On May 30, 2017, the circuit court heard father's appeal of the JDR court dispositional order; it found that L.D. was not at risk of abuse or neglect and returned him to father and mother's care and custody. Thereafter, the JDR court found that O.D. was not at risk of abuse or neglect.

After the children returned to their parents' custody, the Department received several child protective services complaints. The family resided in Hope House, a homeless shelter for families, and received numerous services, including individual and family counseling, life skills, and reunification services.

On September 1, 2017, O.D. was hospitalized and diagnosed with failure to thrive. At the same time, L.D. had a "nasty ear infection" in both ears but the parents had allowed the Medicaid coverage to lapse for the children and had not obtained the medication prescribed for L.D. two weeks earlier.[4] The Department filed petitions seeking a determination that L.D. and O.D. were children in need of services (CHINS petitions). The JDR court found that L.D. and O.D. were children in need of services and ordered the parents to maintain Medicaid eligibility, keep all scheduled medical appointments for the children, follow all doctor's recommendations, and give all medications as prescribed.

The Department subsequently required the parents to participate in an attachment-caregiving evaluation. The evaluator determined that L.D.'s attachment with father was "[d]isorganized and included an unusual mix of contradictory patterns (anxious-inhibition

---

[4] Child protective services (CPS) investigated the matter and made a finding of medical neglect, Level 2, against father for L.D. and a finding of physical neglect, Level 2, against father for O.D.

- 4 -

and anxious-ambivalence)." The evaluator found that L.D.'s "attachment developmental trajectory [was] far out of the average range and moderate to high risk . . . in relation to each of his parents." The evaluator opined that father's caregiving abilities were limited.

On March 22, 2018, a jury convicted father of two counts of child cruelty and one count of felony child abuse, as related to the October 2016 incident with W.A.V. The trial court sentenced appellant to a fifteen-month active sentence.[5] After father was incarcerated, mother's mental health deteriorated, and there was "increased instability" in the home. On May 22, 2018, the Stafford County Juvenile and Domestic Relations District Court conducted a review of the CHINS petitions and transferred custody of L.D. and O.D. to the Department due to concerns about father's incarceration, mother's mental instability, and ongoing neglect.[6]

The Department expressed concern that although the family had received "extensive supports and services," the parents "did not successfully retain or implement any new skills." The Department referred the parents for an assessment to determine if any additional reunification services could be helpful for the family. After interviewing the parents and the children, the evaluator concluded that "the prognosis for successful, safe reunification in this case [was] exceedingly poor." The evaluator noted that the Department had provided the parents with numerous services, but their parenting performance never improved. Although father had expressed a desire to participate in services to become a better parent, his participation in services, such as individual therapy, couples therapy, and mental health treatment, had been

---

[5] Father appealed the convictions to this Court. His petition for appeal was denied regarding one of the child cruelty convictions and the felony child abuse conviction; the Court affirmed father's conviction for the other child cruelty charge. See Dorestal v. Commonwealth, Record No. 1373-18-2 (Va. Ct. App. Nov. 5, 2019).

[6] After the CHINS petition had been filed in Fredericksburg, the family had moved to Stafford County, so the matter was transferred to Stafford County for monitoring. The Stafford County Juvenile and Domestic Relations District Court then transferred the matter back to Fredericksburg after the entry of May 22, 2018 order.

"fragmented and unreliable."  Considering the history of the case, including father's convictions and the CPS dispositions, the evaluator opined that the children would be at "a high risk of abuse or neglect" if they were returned to "either or both parents."

On November 21, 2018, the JDR court terminated father's parental rights and approved the foster care goal of adoption for L.D. and O.D.  Father appealed to the circuit court.

On November 1, 2019, the parties appeared before the circuit court.  The Department presented evidence concerning the children's progress in foster care.  L.D. was "thriving and healthy" and starting preschool.  O.D. was receiving occupational and physical therapy because he had "bowed legs pretty bad."  O.D. was "on track cognitively" and a "very bright happy little boy."

The Department also presented evidence of the numerous services provided to the family since the October 2016 removal of the children.  Those services included:  Micah housing and utility payments, Hope House, Project Link, Village Fathers, family reunification services, annual bus passes, psychological evaluation, psychosexual evaluation, attachment evaluation, individual counseling, couples counseling, food stamps and food provided by other resources, Healthy Families, and Dare to be You parenting class.  Although father had participated in numerous services, the services were not successful and father had not shown any improvement in his ability to care for the children.

Throughout the Department's involvement with the family, father had never obtained and maintained safe and stable housing.  When the children initially entered foster care, father and mother lived with a friend in a studio apartment; they moved to Hope House, and then moved to a townhouse that was paid for by the Micah program.  By August 2018, however, they had been evicted from the townhouse in Stafford County.[7]  The Department was unable to verify father's

---

[7] Father was incarcerated at the time.

current housing situation, but he produced evidence that he and mother were living at a homeless shelter in Prince William County at the time of the hearing. Father had been unable to maintain a steady job throughout the case and was unemployed at times. Father never completed a family budget or developed a child care plan.

Another concern was the stability of the parents' relationship. Father and mother frequently argued, and father asserted that mother manipulated him and lied to get attention. Throughout the case, father vacillated as to whether he would separate from mother or continue living with her, but at the time of the circuit court hearing, they were living together.

After hearing all of the evidence and arguments, the circuit court terminated father's parental rights under Code § 16.1-283(C)(2) and approved the foster care goal of adoption for L.D. and O.D. This appeal followed.[8]

## ANALYSIS

Father argues that the circuit court erred in terminating his parental rights and finding that termination was in the children's best interests. "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without

---

[8] After the entry of the final orders, father had signed a "Waiver of Appeal," stating that he had agreed to waive his appeal rights "in consideration for a Post Adoption Communication Agreement." Less than two weeks later, father timely noted his appeal and indicated that the Agreement was "not going to be entered in this case." We find that father's right to appeal was not waived and further note that father challenges only the circuit court orders terminating his parental rights to his children, L.D. and O.D., and the orders approving the foster care goal of adoption for those children.

evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The circuit court terminated father's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

The circuit court acknowledged that father loved his children. The circuit court also recognized that there are "plenty of people who have intellectual disabilities or have emotional psychological issues and are able and do raise their children and do a very good job. There are plenty of people who have very limited means who are good, loving, nurturing parents and there's nothing wrong." The circuit court, however, was concerned that the parents' relationship "affects or impacts their children in a negative way." The circuit court found that the "uncertainty and turmoil that's existed in their live[s] together has had an extremely negative impact upon their own children." The circuit court noted that father was unable to "hold a steady job, to maintain a steady home, to do all the things that are required to nurture the child." The Department presented evidence that it had provided father with numerous services for years, yet he was unable to improve his parenting skills. After the most recent assessment in the fall of 2018, the evaluator had concluded that there were no more services available to assist the family.

Throughout the Department's involvement with the family, several professionals had expressed concern about father's ability to parent the children safely, and father was unable to demonstrate that he could care for the children. The circuit court concluded that father was unable to substantially remedy the conditions that led to the children's placement and continuation in foster care.

In addition, the circuit court found that it was in the children's best interests to terminate father's parental rights. "'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Id. (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)). "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

The circuit court found that L.D. and O.D. "deserve to have . . . structure and stability and nurturing and they deserve to have that without having to wait years to get things straight." At the time of the circuit court hearing, L.D. was three years old and had been in foster care twice; O.D. was two years old and had spent half of his life in foster care. While in father's care, and after father had received services for approximately one year, L.D. had suffered a "nasty ear infection" in both ears that went untreated because his Medicaid coverage had lapsed and the parents did not obtain his medication. O.D. was hospitalized after being diagnosed with failure to thrive. Father had not demonstrated that he could provide for and safely parent the children. At the time of the circuit court hearing, both children were doing well and thriving in foster care.

Based on the totality of the circumstances, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2) and finding that termination was in the children's best interests.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>