COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Senior Judge Annunziata

KAYLYN MOORE

v.     Record No. 0236-20-3

HARRISONBURG-ROCKINGHAM
 SOCIAL SERVICES DISTRICT

MEMORANDUM OPINION*
PER CURIAM
AUGUST 11, 2020

UNPUBLISHED

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Clark A. Ritchie, Judge

(Lynn Svonavec, on brief), for appellant.

(Sheila Keesee Paladino, Assistant County Attorney; W. Andrew
Harding, Guardian *ad litem* for the minor children; Convy &
Harding, PLC, on brief), for appellee.


Kaylyn Moore (mother) appeals the child protective orders and dispositional orders

awarding custody of mother's three children to her sister, Deanna Moore (the aunt). Mother argues

that the circuit court erred in finding that it was in the children's best interests to transfer legal and

physical custody to the aunt "when there was no proof that the children had ever been seriously

harmed while they were in [mother's] care." Mother also contends that the circuit court erred in

admitting testimony that she had failed a drug screen because "there was no physical evidence to

corroborate the testimony." Upon reviewing the record and briefs of the parties, we conclude that

this appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court.

See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" C. Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180 (1991)).

Mother has three minor children, who are the subject of this appeal. In the early hours of June 8, 2019, Shenandoah County Child Protective Services received a report that mother had left the children alone in the family's apartment for approximately one hour. The children were approximately two, four, and six years old at the time. The police had been called to do a welfare check on mother's apartment. The police officer observed mother check on the children in her apartment and then go to a neighbor's home. When the police officer knocked on the neighbor's door and announced himself, there was no answer. The police officer returned to mother's apartment, knocked, opened the unlocked door, and announced his presence. He discovered one child asleep on the floor by the front door, and two other children asleep on the floor in the apartment. The police officer did not see a telephone, furniture, or beds in the apartment. The police later arrested mother for felony child neglect.

The Shenandoah County Child Protective Services responded to mother's apartment, and the worker, mother, and the aunt signed a safety plan, which required the children to be supervised at all times and allowed the aunt to check on the children. The children were not removed from mother's care at that time.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

Two days later, mother took a drug test, which was positive for methamphetamine.[2] Mother admitted to the social worker that she had used methamphetamine two weeks earlier when the children were with the aunt. Mother signed a "Diversion Agreement," and agreed that the children would be temporarily placed with the aunt. On June 21, 2019, mother went to a substance abuse assessment, but she refused to discuss her substance abuse history.

In July 2019, mother moved near the aunt and children in Harrisonburg, so the case was transferred to the Harrisonburg-Rockingham Social Services District (the Department). The Department requested that mother take a urine drug screen test, but the sample was diluted. The Department conducted a home visit with mother, who informed the social worker that she was not discussing her substance abuse history. The Department attempted a subsequent home visit, and even though the Department saw mother and a friend enter the home, nobody answered the door. Mother later told the Department that she did not answer the door because "she had company."

The Department filed petitions for preliminary child protective orders. On September 11, 2019, the Rockingham County Juvenile and Domestic Relations District Court entered preliminary child protective orders and ordered the children to live with the aunt. The JDR court awarded supervised visitation to mother, at the aunt's discretion and in consultation with the Department and the children's guardian *ad litem*.

On October 24, 2019, mother appeared before the Shenandoah County Juvenile and Domestic Relations District Court on the felony child neglect charges; she pleaded no contest to reduced charges of contributing to the delinquency of a minor. Mother was ordered to submit to

---

[2] At the circuit court hearing, mother objected to the admission of testimony regarding this test. The circuit court overruled the objection.

a drug test and tested positive for methamphetamine. As a result, she was ordered to complete a substance abuse assessment and follow all recommendations.

On November 20, 2019, the Rockingham County Juvenile and Domestic Relations District Court (the JDR court) adjudicated that the children were abused or neglected and entered dispositional orders and final child protective orders. The JDR court transferred legal and physical custody of the children to the aunt and awarded supervised visitation to mother at the aunt's discretion and in consultation with the Department and the children's guardian *ad litem*. The JDR court ordered mother to cooperate with the Department's recommended services, including mental health and substance abuse treatment. Mother appealed the JDR court's rulings to the circuit court.

On January 9, 2020, the parties appeared before the circuit court. The aunt had been caring for the children one night each week before the underlying June 2019 incident and regularly took one child to ballet practice. The aunt testified that the children had been living with her since June 10, 2019, when mother signed the Diversion Agreement. Mother had scheduled visits with the children on Tuesday, Wednesday, and Saturday evenings, but she missed one or two visitations each week.

The Department presented evidence that mother "was unable to acknowledge that her actions impacted her children." The Department reported that mother's cooperation had been "inconsistent, sparse, very distrusting."

Mother denied being addicted to drugs before her children were removed from her care. She argued that "the occasional use of drugs, while her children were with a babysitter, did not qualify her as an addict." She, however, admitted that her drug usage increased after she lost custody of the children and that she had "a problem." Although mother stated that she was

willing to participate in services, she had moved to a neighboring county, so she was no longer eligible for funding for services and could not afford them.

After hearing the evidence and arguments, the circuit court adjudicated that the children were abused or neglected and entered dispositional orders and final child protective orders. The circuit court transferred legal and physical custody of the children to the aunt and awarded mother supervised visitation at the aunt's discretion, in consultation with the Department and the guardian *ad litem*. The circuit court further held that the visitations had to be arranged seven days in advance and could not be cancelled except in "emergent circumstances." The circuit court also ordered mother to stop her drug use, complete parenting classes and a mental health assessment, and comply with recommended services including mental health and substance abuse treatment. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

*Best interests of the children*

Mother argues that the circuit court erred in finding that "there was sufficient evidence to prove that the children's best interests would be served by transferring legal and physical custody to the [aunt] when there was no proof that the children had been harmed while they were in

[mother's] care." Mother also asserts that there was insufficient evidence to find that she had abused or neglected the children. She contends that there was no evidence that she had used drugs around her children or that they lacked basic necessities. Mother argues that the circuit court abused its discretion by transferring custody of the children, especially since they were already in the aunt's care under the Diversion Agreement.

"When addressing matters concerning a child, . . . the paramount consideration of a trial court is the child's best interests." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 319 (2013) (quoting Logan, 13 Va. App. at 128). "'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Id. (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)).

Code § 16.1-228(1) defines an abused or neglected child as any child: "[w]hose parents . . . creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement or impairment of bodily or mental functions." "[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child." D. Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 342, 364 (2012) (quoting Jenkins, 12 Va. App. at 1183). This Court previously has recognized that a "mother's continued drug use created an unsafe environment for . . . [her] children" and placed them "in danger of death, disfigurement or impairment of bodily or mental functions." Id. Proof by a preponderance of the evidence is the appropriate standard for abuse and neglect cases. See Cumbo v. Dickenson Cty. Dep't of Soc. Servs., 62 Va. App. 124, 130 (2013).

Here, the circuit court found that mother abused or neglected the children and entered child protective and dispositional orders. Mother argues that there was no evidence that the children had been "seriously harmed" while in her care; however, she had left the children, who were two, four, and six years old, unsupervised for at least one hour on June 8, 2019. When the police officer knocked on the door of the apartment where he knew mother was located, she did not answer. The circuit court found that her refusal to answer the door was "not an appropriate parental response." As a result of her actions, she was convicted of three counts of contributing to the delinquency of a minor.

Moreover, the circuit court heard evidence regarding mother's drug use and noted that mother "was the only witness to state she was an addict." Mother admitted that she had "a problem" with drugs and testified that the Department had "created this problem and made her an addict." She claimed to have not had a drug addiction before the children were placed with the aunt; however, mother had confessed to using drugs before the June 2019 incident and continued to use them. The circuit court found it "incredulous" for mother to blame the Department for her drug addiction. The circuit court stated that mother had "lost custody of her children because of her own choices, and that she ha[d] refused to accept responsibility for those decisions." The children would have been at "substantial risk" of harm if they were returned to mother's care. Code § 16.1-228(1).

Considering the totality of the evidence, the circuit court did not err in finding that the children were abused or neglected and that it was in the children's best interests to transfer custody to the aunt.

*Evidence regarding a drug screen*

Mother argues that the circuit court erred in admitting witness testimony that she had failed a drug screen "when there was no physical evidence to corroborate the testimony." During

- 7 -

the circuit court hearing, Shenandoah County social worker Courtni Green Mathers testified that on June 10, 2019, she visited mother at her place of employment. After mother denied using drugs, Mathers asked mother to take a drug test. Mother stated that she needed to speak with her attorney and went into a private office. She emerged thirty minutes later, and Mathers noticed that mother was walking "very slowly and took 'awkward, small strides,'" and sat slowly, near the front edge of the seat. Mother refused to leave the bathroom door open ajar or allow Mathers to observe her take the urine drug screen test because mother alleged that watching her would "be a sexual assault upon her." Mathers listened at the bathroom door and heard "'wrapper like material' crinkling or crunching from behind the closed door." The urine test results were negative.

Later that same day, Mathers requested mother to take an oral drug screen test at Mathers's office. Mathers testified that the test results were positive for methamphetamine. Mother objected to this testimony based on hearsay because Mathers did not produce a copy of the test results at trial. The circuit court overruled the objection and held that Mathers "had already testified about the training she had received and the experience she had regarding the administration and interpretation of the oral drug screen test."

"Generally, the admissibility of evidence 'is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Surles v. Mayer, 48 Va. App. 146, 177 (2006) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16 (1988)) (brackets in original); see also Castillo, 68 Va. App. at 558.

Assuming without deciding that the circuit court abused its discretion in allowing the testimony, any error was harmless. "In Virginia, non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Andrews v. Creacey, 56 Va. App.

606, 625 (2010) (quoting Code § 8.01-678). "If, when all is said and done, [it is clear] that the error did not influence the [fact finder], or had but slight effect, . . . the judgment should stand." Id. (quoting Clay v. Commonwealth, 262 Va. 253, 260 (2001)) (alterations in original).

The record does not reflect that the circuit court attached any weight to the results of this particular drug test. The circuit court considered the totality of the evidence and mother's ongoing drug usage. Mathers testified that after being informed of the positive test results, mother admitted to using methamphetamine two weeks earlier when the aunt was watching the children. Subsequently, on October 24, 2019, mother tested positive for methamphetamine after being ordered to take a drug test. Mother admitted during the circuit court hearing that her drug use was "a problem." Accordingly, any potential error regarding the testimony of the positive drug test on June 10, 2019 was harmless.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.