COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Athey and Senior Judge Clements

CARRIE PILENZA

MEMORANDUM OPINION[*]

v.     Record No. 0291-20-3

PER CURIAM
SEPTEMBER 8, 2020

NELSON COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF NELSON COUNTY
James F. Watson, Judge

(Peter S. Frazier, on brief), for appellant.

(P. Scott DeBruin; Herbert E. Taylor, III, Guardian *ad litem* for the minor child, on brief), for appellee.

Carrie Pilenza (mother) appeals an order terminating her parental rights to her child, J.P. Mother argues that the circuit court erred by terminating her parental rights "without clear and convincing evidence that doing so was in the best interests of the child." Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Mother and Christopher Pilenza (father) are the biological parents to J.P., who is the subject of this appeal.[2] Mother and father married in 2015, and their first child, C.P., was born in 2016. The circuit court terminated mother's and father's parental rights to C.P. on November 27, 2018. This Court affirmed the circuit court's rulings. See Carrie Pilenza v. Nelson Cty. Dep't of Soc. Servs., Record No. 0034-19-3 (Va. Ct. App. Mar. 17, 2020); Christopher Pilenza v. Nelson Cty. Dep't of Soc. Servs., 71 Va. App. 650 (2020).

Mother has a history of mental health concerns. While C.P. was in foster care, mother gave birth to J.P., who experienced withdrawal symptoms from mother's prescribed medications. The Department had remained involved with the family after J.P.'s birth because it was concerned about J.P. being substance exposed, J.P.'s poor feedings and his low weight, and mother's mental health. On January 3, 2018, the Department received a complaint for physical neglect after mother allegedly took J.P. with her while her friend purchased marijuana. The

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignment of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] The circuit court also terminated father's parental rights. Father appealed the circuit court's ruling. See Pilenza v. Nelson Cty. Dep't of Soc. Servs., Record No. 0292-20-3.

Department removed J.P. from mother's care on January 8, 2018; J.P. was approximately two months old.[3] The Department placed J.P. in the same foster home as C.P.

The Department advised mother to continue with her outpatient counseling, medication management, and weekly meetings with her parent mentor. Although mother had participated in a psychological evaluation after C.P.'s removal, the Department requested that mother participate in a second psychological assessment with a parenting component "to assess improvement and shortcomings" since that previous evaluation.

Dr. James Anderson, an expert in clinical psychology, conducted the psychological evaluations. In 2018, Dr. Anderson found mother to be at "high risk for inconsistent, unpredictable behavior and likely to alternate between depression and externalizing or acting . . . out her stress." Dr. Anderson further found that the findings from the parenting assessment were "mixed in terms of her ability to protect a child's health, safety and welfare." Dr. Anderson diagnosed mother with "[m]ajor depression, recurrent, moderate (severe in partial remission);" unspecified anxiety disorder; histrionic, borderline, and emotionally unstable traits; and post-traumatic stress disorder. Dr. Anderson recommended that she continue her mental health treatment and medication management. Dr. Anderson opined that the "chances of substantial, sustained improvement may be no better than 50/50 even with good compliance and the best of care." After speaking with mother and Mary Rice, mother's counselor, Dr. Anderson followed up his 2018 report with an addendum, which indicated that mother appeared to have developed bipolar characteristics.

In 2019, Dr. Anderson evaluated mother again and found that any changes in the test results were "relatively minor." Dr. Anderson opined that mother continued to have "significant

---

[3] Father was incarcerated at the time of J.P.'s removal; the County of Albemarle Circuit Court had convicted father of eluding the police and felony child endangerment.

psychiatric problems," although she appeared "to be a bit less depressed and a bit calmer and more in control, perhaps less moody or less impulsive in terms of her changes in emotion." Dr. Anderson found that mother did better in some areas of the parenting portion of the evaluation and worse in others; for example, she identified fewer critical issues but did a "better job of recognizing the need to obtain professional help for children in various situations." After reviewing his evaluations, Dr. Anderson concluded that the outlook for mother showing substantial positive changes is "less optimistic now."

Mary Rice was mother's counselor from April 2018 to March 2019, yet Rice kept in contact with mother after March 2019. While mother was in counseling, they had worked on mental health skill building, parenting education, and outpatient counseling. Rice explained that mother had "[d]epression, anxiety, poor decision making, poor impulse control, [and] . . . huge difficulty regulating her emotions at times." They had worked on her "communication skills, . . . some trauma history, concrete or rigid thinking, negative modes of thought, dependency issues, anger management, communication skills and conflict resolution." They also had discussed her suicidal ideations and post-partum depression. In June 2017 and in July 2019, mother experienced suicidal ideations, which required hospitalization. Rice did not see any consistent progress with mother's mental health, and mother's mental health was "a day-to-day struggle."

Rice also worked with mother "a lot" on parenting skills training, direct modeling, and communication skills training. Rice noticed that mother's parenting improved "a little bit" after working with her extensively. Rice discovered that mother's parenting skills "fluctuated sort of with her moods and emotions. So when she was not doing as well emotionally, her parenting skills were not doing as well either."

In addition to referrals for counseling, mental health skill building, and parenting education, the Department provided mother with supervised visitation, which she regularly

attended. After observing several of the visitations, Rice noticed that mother clearly loved J.P. but struggled to meet his needs, including knowing when to change his diaper and feed him, without constant reminders. Mother had "a lot of difficulty with multi-tasking" and did not adjust to changes well. Mother last visited with J.P. on August 30, 2019. Mother never progressed past supervised visitation.

On March 28, 2019, the Nelson County Juvenile and Domestic Relations District Court (the JDR court) terminated mother's and father's parental rights. Both mother and father appealed to the circuit court.

The parties appeared before the circuit court on October 4 and 29, 2019. Rice testified that she had spoken with mother on October 3, 2019, and found that mother had not "maintained the progress" that they had made. Rice did not recommend returning J.P. to mother's care because it would be "next to impossible" for mother to maintain her mental health and care for J.P. at the same time. Rice opined that mother's poor impulse control and decision-making could put J.P.'s safety in jeopardy and that mother's inability to control her moods and emotions could result in a "very chaotic environment" for J.P.

The Department presented evidence that J.P. had had some developmental delays and had received physical therapy and speech therapy while in foster care. At the time of the circuit court hearing, J.P. was doing "[v]ery well" and was in good health; he had been living in the same foster home with C.P. since his removal. J.P. had a "[v]ery positive, very loving, great attachment" to his foster parents.

After the Department presented its case, mother moved to strike the Department's evidence, which the circuit court denied. Mother testified about her mental health and the help she obtained for her depression. Mother testified that she saw "the doctors that [the Department] told [her] to see" and did "what [she] was told to do." She continued to take her prescribed

medication. Mother, however, explained that the removal of C.P. and J.P. had had a "[v]ery detrimental" effect on her mental health and had contributed to her depression and anxiety. Mother testified that when she was hospitalized in July 2019, she was no longer working with Rice and her medication needed adjusting. After her hospitalization, mother started working with a new counselor on mental health skill building and developing new coping strategies. Mother indicated that she was committed to continuing counseling and her medication. Furthermore, mother testified that she had maintained full-time employment, had stable housing, never abused drugs or alcohol, and had never harmed J.P. Mother informed the circuit court that she was capable of caring for herself and J.P. and wanted him returned to her custody. Father supported placement of J.P. with mother.

At the conclusion of all of the evidence, mother renewed her motion to strike, which the circuit court denied. After hearing the evidence and arguments, the circuit court found that mother's parental rights to J.P.'s sibling had been terminated and that termination of mother's parental rights to J.P. was in his best interests. The circuit court entered orders terminating mother's parental rights to J.P. under Code § 16.1-283(E)(i) and approving the foster care goal of adoption. This appeal followed.

ANALYSIS

Mother argues that the circuit court erred by terminating her parental rights under Code § 16.1-283(E)(i). "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't

of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

A parent's parental rights may be terminated "if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated . . . ." Code § 16.1-283(E)(i). Mother concedes that her parental rights to C.P. had been involuntarily terminated. Here, she argues that the circuit court erred by finding that it was in the best interests of J.P. to terminate her parental rights. Mother emphasizes that she never harmed J.P. or put him in danger. Moreover, she stresses that she "adequately addressed" her mental health and was compliant with her medication.

"'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Id. (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)).

The circuit court found that mother had "a complicated psychological diagnosis or diagnoses that . . . adversely effected [sic] her parenting abilities." Dr. Anderson testified about mother's mental diagnoses and how it affected her parenting abilities. After evaluating mother in 2018 and following up with her in 2019, Dr. Anderson was "less optimistic" about mother's ability to make "substantial positive changes." The Department presented extensive evidence of the numerous services, including parenting education, counseling, mental health skill building, and supervised visitation, provided to mother. Rice testified that she had worked with mother for approximately thirteen hours per week for approximately one year and that Rice had never provided "this level of counseling to anyone through any other agency." Despite all of the

services, Rice opined that at the time of the circuit court hearing, mother still was not in a position to care for J.P. safely. Mother had never progressed beyond supervised visitation with J.P. In July 2019, a few months before the circuit court hearing, mother was hospitalized for having suicidal ideations. The circuit court found that mother had "not shown significant improvement" while J.P. was in foster care.

The Department had removed J.P. when he was approximately two months old, and at the time of the circuit court hearing, J.P. had been in foster care for two years. J.P. had been in the same foster home with C.P. since his removal, was healthy, and had become attached to his foster parents. The circuit court found that J.P. was "doing well" in foster care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Contrary to mother's arguments, the circuit court did not err in terminating her parental rights under Code § 16.1-283(E)(i) and finding that termination of her parental rights was in the best interests of the child.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.