UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Athey and Senior Judge Humphreys
Argued at Lexington, Virginia


SAMUEL ADAM HEATHERLY

MEMORANDUM OPINION[*] BY
v.          Record No. 0933-24-3          JUDGE ROBERT J. HUMPHREYS
OCTOBER 7, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Shannon T. Sherrill, Judge

Eric Weathers, Assistant Public Defender (Virginia Indigent Defense
Commission, on briefs), for appellant.

Sabina B. Thaler, Assistant Attorney General (Jason S. Miyares,
Attorney General, on briefs), for appellee.


The circuit court of Augusta County found Samuel Adam Heatherly in violation of his

probation and revoked his previously suspended sentences.  The circuit court then resuspended

all except ten months on two of Heatherly's underlying convictions, to be served concurrently

for an active period of incarceration of ten months.  On appeal, Heatherly asserts that the circuit

court erred by classifying his violations as "special," rather than "technical" in nature, and thus

by imposing an active jail sentence.  However, we do not reach the merits of Heatherly's

contention because Heatherly has served his sentence and this appeal is moot.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

In 2005, a jury convicted Heatherly of rape of a child less than thirteen years old in violation of Code § 18.2-61, and forcible sodomy of a child less than thirteen years old in violation of Code § 18.2-67.1(1). The circuit court sentenced Heatherly to concurrent sentences of thirty years, with twenty-three years and ten months suspended on each charge, for a total active sentence of six years and two months. The circuit court conditioned Heatherly's suspended sentences on supervised probation "to commence on his release from incarceration, under the supervision of a Probation Officer for twenty (20) years or unless sooner released by the Court or by the Probation Officer." The circuit court's order added that "the defendant shall comply with all the rules and requirements set by the Probation Officer" and that probation "shall include substance abuse counseling and/or testing as prescribed by the Probation Officer."

In October 2006, the circuit court convicted Heatherly of another count of forcible sodomy against a different child under the age of thirteen. Heatherly was at least seventeen years old at the time of the offense, and the victim was between four and six years old. Heatherly's social history explained that he needed sex offender treatment and that he had "accepted little responsibility for his behavior and the impact his crime has on the victim." In 2007, the circuit court sentenced Heatherly to forty years' incarceration, with twenty-six years suspended, for an active sentence of fourteen years. The record indicates that the circuit court also verbally ordered that as a condition of his suspended sentence, Heatherly was required to "obey any additional terms and conditions of your probation that you may be given by your Probation Officer." However, the written sentencing order reflects that the circuit court suspended Heatherly's sentence on the condition that he successfully "complete any substance abuse screening, assessment, testing and treatment as directed by the Department of Corrections"

and that he pay "any fees associated with substance abuse treatment or intervention as required by the treatment or intervention program."

Heatherly was released to supervised probation on April 24, 2024. Initially, Heatherly's release plan required him to live at the Dorcus House Community Residential Program in Roanoke, Virginia. But when Heatherly reported to the Roanoke Probation and Parole office, he advised his probation officer ("PO") that he did not want to remain there. After some discussion, Heatherly's PO agreed to allow Heatherly to transfer to District 12 to develop a new home plan. "He was allowed to stay at an approved address in Waynesboro for one evening and instructed to report to District 12 by 11:00 a.m. the following morning." The probation officer determined that Heatherly would benefit from the Department of Corrections Sex Offender Treatment program and Heatherly signed "sex offender special instructions," and was placed on Global Positioning System ("GPS") monitoring.

The next day, Heatherly's PO told him that the address where he spent the night was "deemed to be an inappropriate address" and that he would need to secure a hotel room and a flip phone. His PO also reminded him that his curfew was 9:00 p.m. to 6:00 a.m. Heatherly was noncompliant and disrespectful with probation staff, and he advised his PO that his drug test would be positive because he had used methamphetamine in prison. Moreover, Heatherly continued to deny responsibility for his criminal behavior.

At 5:30 p.m., Heatherly contacted his PO to tell her that he was at Walmart, was having trouble activating the flip phone, and that because he had run out of money for a hotel, he bought a tent. Heatherly's PO reminded him about his 9:00 p.m. curfew and told him to activate his phone and find an appropriate location for his tent by curfew. Two hours later, another PO went to the Walmart to help Heatherly activate his phone. That officer observed that Heatherly's shopping cart included "male sexual vitality pills," new boots and clothing, but no tent. At

9:30 p.m., Heatherly told his PO that he needed to return to the unapproved address from the previous night to get money for a hotel. In response, Heatherly's PO told him he was already in violation of his curfew and forbade him from returning to the unapproved address. Heatherly returned to the unapproved address and allowed his GPS battery to nearly die. Due to "concerns for public safety," Heatherly's PO requested the issuance of a PB-15. Officers found and served Heatherly at the unapproved address at 12:00 a.m.

Heatherly's PO filed major violation reports for both of his prior sentencing events. The reports alleged that Heatherly had specifically violated Condition 6 of the terms and conditions of his probation. The PO's "violation notes" indicate multiple grounds in support of Heatherly's violations including violation of Condition #6 – failure to follow the instructions of the probation officer and violation of a special condition that he was not in compliance with the requirements of Special Instructions #1, #10 and #20 of the Sex Offender Treatment program in that Heatherly failed to reside only "at [an] address as approved," that he needed to "comply with electronic monitoring to include . . . Global Positioning (GPS)," and that he must "observe curfew restrictions."

At Heatherly's revocation hearing, his counsel argued, "Judge, actually I think this is a first technical violation. The sentencing order from 2005 doesn't list any conditions other than comply with probation." The circuit court responded that "[s]pecial conditions of probation can be imposed not only by the Court, but by the probation officer supervising the probation[er]." The circuit court concluded that according to this Court's guidance in *Thomas v. Commonwealth*, 77 Va. App. 613 (2023), probation officers could fashion non-technical conditions of probation and that Heatherly had violated the sex offender conditions outlined in his sex offender contract with probation and parole. The circuit court also stated that "those are not conditions that are the same as the general conditions [imposed] upon all probationers. In fact, they are unique to . . . a

- 4 -

very extreme minority of cases supervised by probation and parole." Thus, the circuit court concluded that contrary to Heatherly's argument, this behavior was "a violation of condition[] six, which is a technical violation, as well as special conditions of probation for not complying with the sex offender special treatment." The circuit court concluded that Heatherly had violated both a technical condition of probation by failing to follow the instructions of the probation officer and a special condition of probation for failing to comply with the GPS monitoring and curfew conditions of the Sex Offender Treatment program. The circuit court then revoked all three of Heatherly's suspended sentences and resuspended all except ten active months.

After the circuit court announced Heatherly's sentence, Heatherly's counsel again stated that the conduct leading to his violation "fits under the description of what the technical violations are" and noted that the court's order did not require him to complete sex offender treatment. The circuit court reminded Heatherly that his PO ordered him to do sex offender treatment, which Heatherly's counsel conceded. The PO also testified that Heatherly was placed on GPS because it was district policy to require anyone convicted of such crimes to be "placed on GPS supervision for a period of three years even though it isn't in the sentencing order."

On May 28, 2024, Heatherly filed a motion for sentence reduction in the circuit court arguing that "[t]he evidence before the court, by argument of defense counsel, and by the exhibit introduced by the Commonwealth that was attached to the Major Violation Report, was that Mr. Heatherly's conduct was encompassed by the Condition 6 violation alleged in the report." Heatherly opined that "pursuant to *Thomas*, his conduct is properly described as a 'failure to follow the instructions of the probation officer' and is, therefore, a technical violation under . . . Code § 19.2-306.1."

At a hearing on the motion, the circuit court was not persuaded that the heading on the form enumerating the sex offender conditions, which stated that they were issued "pursuant to

- 5 -

Condition #6 of your Conditions of Supervision," governed whether they were technical or non-technical conditions. Ultimately, the circuit court held that Heatherly's failure to reside at an approved residence was a technical violation under Code § 19.2-306.1(A)(ix), which states that "the probationer must gain permission to change his residence or remain in the Commonwealth or other designated area." The circuit court also concluded, however, that Heatherly's violations of the sex offender conditions regarding GPS monitoring and curfew were non-technical violations. Thus, the circuit court denied Heatherly's motion for a reduction of his sentence. Heatherly then noted this appeal.

Before this matter proceeded to oral argument, this Court requested additional briefing from the parties on "whether Mr. Heatherly has finished serving the sentence he appeals and, thus, whether this appeal should be dismissed as moot." The Commonwealth responded by conceding that Heatherly had served his sentence and the issue was moot.[1] Heatherly declined to answer our question regarding whether he had served his sentence and instead asserted that the Commonwealth should be prohibited by the approbate/reprobate doctrine from arguing that the issue was moot because it had initially taken the position that it was not moot and, further, that in any event, this Court should address the merits of his appeal because the issue was capable of repetition.

ANALYSIS

I. Underlying Legal Principles

Subject to certain conditions not at issue in this appeal, "in any case in which the court has suspended the execution or imposition of sentence, the court may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or

---

[1] The Commonwealth attached an addendum to its supplemental brief that included a letter from Middle River Regional Jail confirming that Heatherly completed his ten-month sentence on February 26, 2025, and was released.

within the period of suspension fixed by the court." Code § 19.2-306(A). "We have consistently held that the 'revocation of a suspended sentence lies in the discretion of the circuit court and that this discretion is quite broad.'" *Commonwealth v. Delaune*, 302 Va. 644, 658 (2023) (quoting *Peyton v. Commonwealth*, 268 Va. 503, 508 (2004)). In such cases, the court may revoke the suspension and "impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306(C).

"Code § 19.2-306.1 creates two tiers of probation violations: (1) technical violations, based on a probationer's failure to do one of ten enumerated actions, and (2) non-technical violations." *Heart v. Commonwealth*, 75 Va. App. 453, 466 (2022). A "technical violation" is one that "specifically matches one of the enumerated technical violations set forth in Code § 19.2-306.1(A)." *Delaune*, 302 Va. at 657. Those are:

> the probationer's failure to (i) report any arrest, including traffic tickets, within three days to the probation officer; (ii) maintain regular employment or notify the probation officer of any changes in employment; (iii) report within three days of release from incarceration; (iv) permit the probation officer to visit his home and place of employment; (v) follow the instructions of the probation officer, be truthful and cooperative, and report as instructed; (vi) refrain from the use of alcoholic beverages to the extent that it disrupts or interferes with his employment or orderly conduct; (vii) refrain from the use, possession, or distribution of controlled substances or related paraphernalia; (viii) refrain from the use, ownership, possession, or transportation of a firearm; (ix) gain permission to change his residence or remain in the Commonwealth or other designated area without permission of the probation officer; or (x) maintain contact with the probation officer whereby his whereabouts are no longer known to the probation officer.

Code § 19.2-306.1(A). These "technical" transgressions reflect "specific requirements imposed on all probationers supervised by probation officers." *Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 193 (2023). A circuit court "shall not impose a sentence of a term of active incarceration upon a first technical violation." Code § 19.2-306.1(C).

A non-technical violation occurs when a probationer has "violated *another condition* other than (i) a technical violation or (ii) a good conduct violation that did not result in a criminal conviction." *Ellis v. Commonwealth*, 84 Va. App. 531, 539 (2025) (quoting Code § 19.2-306.1(B)). Non-technical violations are often referred to as "special conditions." *Burford v. Commonwealth*, 78 Va. App. 170, 182-83 (2023). Courts can include special conditions in their conviction orders. *Id.* at 183. Special conditions are "'non-technical' by nature since they condition behavior beyond the list of behaviors included in Code § 19.2-306.1(A); they are imposed by a court and 'are acknowledged and agreed to by a probationer in written form when meeting with his probation officer to begin a period of supervision.'" *Id.* (quoting *Thomas*, 77 Va. App. at 623). Thus, to be classified as a special condition, the behavior "must be distinct from the conditions included in Code § 19.2-306.1(A)." *Id.*

To that end, "Virginia courts have repeatedly looked to the conduct described in Code § 19.2-306.1 as the touchstone for evaluating whether a probationer" has committed a technical or non-technical violation. *Shifflett v. Commonwealth*, 81 Va. App. 277, 293 (2024). If the "'defendant has committed a technical violation,' Code § 19.2-306.1(A)'s sentencing limitations apply." *Id.* at 292 (quoting *Diaz-Urrutia*, 77 Va. App. at 194). Conversely, "[i]f the violation conduct does not 'match' that listed in Code § 19.2-306.1(A) but matches conduct covered by a non-technical 'special condition' *imposed by the sentencing court*, then it is not subject to any sentencing limitations." *Id.* (emphasis added) (quoting *Burford*, 78 Va. App. at 182-83). A circuit court "may not immunize its suspended sentences from the reach of Code § 19.2-306.1 by crafting 'special conditions' that encompass conduct defined by the statute as a 'technical violation.'" *Diaz-Urrutia*, 77 Va. App. at 191.

After finding Heatherly in violation of both technical and special conditions of his probation, the circuit court revoked his previously suspended sentences and resuspended all but ten

months.  Heatherly completed serving that sentence in February 2025.  Thus, before we can reach the merits of Heatherly's assignment of error, we must determine, as a threshold matter, whether this appeal is moot.

## II.  Mootness

"[A] case is moot and must be dismissed when the controversy that existed between litigants has ceased to exist[.]" *Commonwealth v. Browne*, 303 Va. 90, 91 (2024) (alterations in original) (quoting *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 452 (2013)).  "It is not the office of courts to give opinions on abstract propositions of law, or to decide questions upon which no rights depend, and where no relief can be afforded."  *Lane v. Commonwealth*, 82 Va. App. 658, 662 (2024) (quoting *E.C. v. Va. Dep't of Juvenile Justice*, 283 Va. 522, 530 (2012)).  Thus, "[w]henever it appears . . . that there is no actual controversy between the litigants, or that, if it once existed, it has ceased to do so, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case."  *Browne*, 303 Va. at 91 (second alteration in original) (quoting *Daily Press, Inc.*, 285 Va. at 452).  "[E]ven 'when the parties do not raise the issue of mootness, appellate courts should raise the issue *sua sponte* when the record does not present a live case or controversy.'"  *Palmer v. Commonwealth*, 74 Va. App. 336, 338 (2022) (quoting *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 43 (2014)).  "Accordingly, if 'an event occurs' pending appeal from a lower court judgment that 'renders it impossible . . . to grant [appellant] any effectual relief,' this Court must 'dismiss the appeal.'"  *Id.* (alterations in original) (quoting *Hankins v. Town of Virginia Beach*, 182 Va. 642, 644 (1944)).  As the Supreme Court of Virginia has explained, an "action that involves a live controversy at its inception may become moot during the course of litigation."  *Browne*, 303 Va. at 91 (quoting *Berry v. Bd. of Supervisors*, 302 Va. 114, 129 (2023)).  Given that Heatherly assigns error to the sentence imposed on him for his

probation violation and because he has already served that sentence, whatever controversy between the litigants there may have once been appears, on its face, to have ceased to exist.

Yet Heatherly claims the controversy is still alive. True, a narrow exception to the mootness doctrine provides that a matter is not moot where the dispute is "capable of repetition, yet evading review." *Browne*, 303 Va. at 95 (quoting *Daily Press, Inc.*, 285 Va. at 452). "[T]his narrow exception applies when: '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1997)). But "[t]he capable-of-repetition doctrine applies only in exceptional situations" and "[t]herefore, it is applied 'sparingly' by the Court." *Id.* (first quoting *Spencer*, 523 U.S. at 17; and then quoting *Daily Press, Inc.*, 285 Va. at 452). To prove that a live controversy exists where an offender has already served his sentence, he must "demonstrate 'some concrete and continuing injury' or ongoing 'collateral consequence' of the revocation in order to maintain the litigation." *Id.* at 92 (quoting *Spencer*, 523 U.S. at 7). "Whether the collateral consequences claimed by [a litigant] are sufficient to preclude a finding that the case is moot will be made on a case by case basis." *E.C.*, 283 Va. at 536.

As in *Browne*, Heatherly's assignment of error "involves a challenge to the punishment imposed as a consequence of the revocation." *Browne*, 303 Va. at 93. Indeed, Heatherly does not dispute that the circuit court had sufficient evidence to revoke his previously suspended sentences. Instead, he maintains that unlike in *Browne*—where the evidence showed Browne had already served his active sentence *and* that Browne had already committed a second technical violation during the pendency of the appeal—his case is not moot because he has only committed one technical violation for purposes of Code § 19.2-306.1. Heatherly therefore reasons that his case is "capable of repetition yet evading review" because the circuit court *might* find a future technical

violation to be non-technical in nature and bypass the statute's fourteen-day maximum penalty mandate for a second technical violation, again imposing more time on a future violation than what is allowed under the statute. Perhaps so, but that presumes that Heatherly is likely to violate the conditions of his probation again—a presumption that undermines the entire rehabilitative purpose of probation. A suspended sentence is "an act of grace . . . to allow courts to achieve probation's remedial purpose, affording courts the latitude to rehabilitate the offenders before them." *Hannah v. Commonwealth*, 303 Va. 106, 119 (2024). Moreover, even assuming without deciding that the circuit court sentenced Heatherly to active incarceration in error, the fact remains that "[a]t this point, [Heatherly's] incarceration cannot be 'undone' by the Court," *Browne*, 303 Va. at 94, and we cannot conclude, as Heatherly urges, that the alleged misclassification in the instant proceeding will likely repeat. Indeed, "[i]t is purely a matter of speculation whether such an appearance will ever occur." *Spencer*, 523 U.S. at 16; *see also United States v. Sanchez-Gomez*, 584 U.S. 381, 393 (2018) ("[W]e have consistently refused to 'conclude that the case-or-controversy requirement is satisfied by' the possibility that a party 'will be prosecuted for violating valid criminal laws.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974))).

Our decision in *Lane* does not compel a different result. In that case, the Commonwealth conceded on appeal that the circuit court erred in imposing a two-month active sentence for a first technical violation of probation. 82 Va. App. at 660. But the Commonwealth maintained that Lane's appeal was moot because he had already served the two-month sentence. *Id.* This Court considered, as a matter of first impression, whether "a judge's clear and intentional disregard for a statute" required application of the "capable of repetition, yet evading review" exception to the mootness doctrine. *Id.* at 664. There, the trial judge had stated:

> [W]hile the statute may say that I am required to only impose a
> suspended sentence and that I can revoke no time, I don't accept that.
> I think that what the statute has done is usurped judicial authority. I
> think it is an encroachment on the separation of powers, and that it

> leaves the court with no alternative. It has completely usurped any discretion and authority that this court has to enforce its orders and to enforce probationary rules.

*Id.* We found this statement "to indicate not only the trial court's intent in Lane's revocation hearing, but also the trial court's likely future course of action should Lane appear before the circuit court under similar circumstances." *Id.* We observed that the trial court's disregard for the sentencing limitations provided by Code § 19.2-306.1 was "highly likely to repeat itself" and concluded that the trial court's "blatant disregard for Code § 19.2-306.1 and this Court's precedent" concerning technical probation violations made it likely that "the circuit court will do so again." *Id.* at 664-65. With the trial court's "deliberate defiance of Virginia law," we found the exception to the mootness doctrine applicable under the circumstances. *Id.* at 667.

The *Lane* analysis simply does not apply here. *Lane* was decided on a very narrow set of egregious actions taken by the circuit court that are not present here. In *Lane*, the judge openly defied the law. In this case, at the time of Heatherly's probation violation hearing the law was not sufficiently developed to guide the circuit court in its ultimate finding that by violating the rules of his sex offender conditions Heatherly may have committed a non-technical offense. At the time, the question before the circuit court was arguable and, indeed, it remains arguable today. We therefore find that our decision in *Lane* is not controlling.

### III. Future Technical Violation

At oral argument, Heatherly also argued that his appeal is not moot because our resolution of the merits would determine his exposure to a potential fourteen-day maximum penalty for any future technical violation. We disagree.

Code § 19.2-306.1(A) requires that "[m]ultiple technical violations arising from a single course of conduct or a single incident or considered at the same revocation hearing shall not be considered separate technical violations for the purposes of sentencing pursuant to this section." It

- 12 -

is uncontested that at his probation violation hearing, the circuit court found that Heatherly committed a technical violation by failing to follow the instructions of the probation officer in addition to his failure to abide by the conditions of the Sex Offender Treatment program. Therefore, whether his conduct in this case constitutes an additional technical violation or a violation of a special condition of probation, is immaterial to Heatherly's potential exposure to a future penalty for violation of a technical condition of probation.

In sum, because the "capable of repetition yet evading review" exception to the mootness doctrine does not apply here, and because Heatherly has already served his sentence, the issue raised in this appeal is moot.  Accordingly, the appeal is dismissed.

*Dismissed.*